[Civ. No. 34548. First Dist., Div. One. July 29, 1975.]

WAYNE MERRILL COLLINS, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent.

**COUNSEL**

Wayne Merrill Collins, in pro. per., for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Philip S. Ward, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**MOLINARI, P. J.**—Plaintiff Wayne Merrill Collins appeals from a summary judgment in favor of defendant City and County of San Francisco, in an action for damages for a *false arrest* by one of the city's police officers. The police officer was not joined as a defendant.

Preliminarily, and as an aid in our discussion, we point out that "false arrest" and "false imprisonment" are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology. (*Moore* v. *City & County of San Francisco,* 5 Cal.App.3d 728, 735 [85 Cal.Rptr. 281]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 214, p. 2499.)

We also note that the defendant city's liability for the tort here at issue is coextensive with the liability, if any, of the police officer; if for

any reason the officer would not be liable if made a party, then also the city would not be liable.[1]

The basic question at the summary judgment hearing was, of course, whether there were any factual issues to be tried. ■ In resolving that question the superior court was obliged to construe the city's affidavits strictly, and those of Collins liberally, to the end that the latter not be summarily deprived of the full hearing which would be his due at the trial of his case. (See *Freidberg* v. *Freidberg,* 9 Cal.App.3d 754, 761, 762 [88 Cal.Rptr. 451].) We accordingly state the relevant facts as they tend to support Collins' cause of action, and as they were presumably accepted by the superior court.

On January 11, 1968, Collins participated in a demonstration in San Francisco, protesting the presence of the Secretary of State of the United States. The group was declared by police officers to be an unlawful assembly and an order to disperse was given. Certain of the demonstrators, including Collins, refused to disperse. Thereupon Michael Brady, a police officer at the scene, arrested Collins for certain violations of the Penal Code. Misdemeanor complaints were then filed charging Collins with violations of Penal Code sections 407 (participating in an unlawful assembly), 409 (remaining at an unlawful assembly after a lawful command to disperse) and 416 (refusing to disperse upon a lawful command). The sections 407 and 409 charges (but not the § 416 charge) were dismissed October 18, 1968, by the municipal court, "because they were constitutionally insufficient in that they failed to give [Collins] adequate notice of the charges." On the same day Officer Brady "swore out a more factually detailed complaint against plaintiff"; the new charges were based on Penal Code sections 408[2] (participating in an unlawful assembly) and 409. Upon the complaint's presentation, by someone whose identity does not appear from the record, to a magistrate, a warrant for Collins' arrest was signed, and issued, and placed in

[1]Government Code section 815.2 provides:

"(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[2]The first complaint charged a Penal Code section *407* violation while the second charged a violation of section *408.* But reference to those statutes indicates that they refer to the same offense.

the warrant files of the city's police department where it remained unexecuted, except as we shall hereafter relate. On December 20, 1968, Collins was found guilty of violating section 416; the penalty imposed was "imprisonment in the county jail 30 days, sentence suspended on 1 yr. probation and to pay [a fine] of $125.00." The sentence was thereafter fully executed and served.

About one year after the warrant's issuance and filing, it somehow came to the attention of the city's police department that the warrant's subject, Collins, was received at an Alameda County hospital as a result of injuries suffered in an assault. A San Francisco police officer, Peter Alarcon, was detailed to execute the theretofore dormant warrant, and to arrest Collins as commanded by it. Collins was arrested and kept in custody until the next morning when he was released on his own recognizance. Three days later the charges upon which the warrant was issued were dismissed.

In the summary judgment proceedings Collins made no complaint against Officer Alarcon who actually made the arrest under the warrant. Instead his theory that the city was liable to him in damages was based upon the conduct, and culpability, of Officer Michael Brady.

As should be commonly known, the municipal court's dismissal of the Penal Code sections 407 and 409 misdemeanor charges operated as "a bar to any other prosecution" of Collins for the same offenses. (See Pen. Code, § 1387.)[3] It was accordingly improper for Officer Brady to "swear out a more factually detailed complaint," recharging the same misdemeanor crimes. From this, and among other things, the officer's failure to thereafter bring about the arrest warrant's timely cancellation, a trier of fact might reasonably conclude that Collins' questioned arrest proximately resulted from the officer's wrongful act and oppression, in the course of his official duties.[4]

---

[3] Penal Code section 1387 provides: "An order for the dismissal of the action, made as provided in this chapter, *is a bar to any other prosecution for the same offense if it is a misdemeanor,* but not if it is a felony." (Italics added.)

[4] We ourselves make no such finding. We do no more than point out it is one of the inferences or conclusions reasonably permitted by the evidence. It may be that the officer did not understand the effect of Penal Code section 1387 as applied to misdemeanor charges, or that he was directed by a superior officer, or the prosecution, or even the court to sign the second complaint. He may have endeavored to cancel the warrant, and it is at least doubtful whether he had any authority or control over such process after its filing. These and other such considerations, as to all of which the present record is silent, might have been established at the trial.

But a critical question remains. Did the here presumed conduct of Officer Brady constitute the "false arrest" of Collins, or was it instead his "malicious prosecution"?

The two concepts are mutually inconsistent; only one of the offenses could have been committed in the course of the officer's criticized conduct. ■ "[A] defendant cannot be held liable for both . . . false imprisonment and . . . malicious prosecution. The two are inconsistent; the plaintiff may be required to elect upon which count to go to the jury." (*Bulkley* v. *Klein*, 206 Cal.App.2d 742, 747 [23 Cal.Rptr. 855]; and see *Singleton* v. *Perry*, 45 Cal.2d 489, 494-495 [289 P.2d 794].)

Collins disclaims here, as he did in the summary judgment proceedings below, any theory or contention that Officer Brady's conduct constituted "malicious prosecution." The reason becomes obvious from a reading of Government Code section 821.6, which provides that: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, *even if he acts maliciously and without probable cause.*" (Italics added.) A police officer is such a public employee.

■ The contrasting offenses were tersely defined in *Stallings* v. *Foster*, 119 Cal.App.2d 614, 619 [259 P.2d 1006], in this manner:

"The distinction between malicious prosecution and false imprisonment is an important one, and is stated to be that 'in malicious prosecution the detention is malicious but under due forms of law, whereas in false imprisonment the detention is without color of legal authority.' "

The court in *Bulkley* v. *Klein, supra*, 206 Cal.App.2d 742, 746-747, adopted a scholarly discussion on the distinction between the two offenses, as follows:

"In Prosser on Torts (2d ed. 1955) at page 53, the distinguishing characteristics of malicious prosecution and false imprisonment are pointed out: 'The kindred action of malicious prosecution protects interests closely related to those involved in false imprisonment, and sometimes the two are confused by the courts. Malicious prosecution is the groundless institution of criminal proceedings against the plaintiff. False imprisonment fell within the action of trespass, as a direct interference with the plaintiff's person, while malicious prosecution was

regarded as more indirect, and the remedy for it was an action on the case. The distinction between the two lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed to him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, upon proof of malice and want of probable cause, as well as termination of the proceeding in favor of the plaintiff.' [¶] And on page 646 Prosser says: '. . . the difference is one of the regularity of the legal process under which the plaintiff's interests have been invaded. If he is arrested or confined without a warrant, or legal authority apart from a warrant, malicious prosecution will not lie, since the essence of that tort is the perversion of proper legal procedure, and the remedy is false imprisonment. On the other hand, if there is valid process or due authority apart from it, the arrest is not "false" and the action must be one of malicious prosecution.' "

■ Under these standards it becomes readily apparent that Collins' arrest and imprisonment, even though malicious, were under "due forms of law" and "color of legal authority." (See *Stallings* v. *Foster, supra,* 119 Cal.App.2d, p. 619.) Officer Brady had complied "with the formal requirements of the law . . . by swearing out a legal warrant"; his offense might have been malicious prosecution, but it was not false arrest. (See *Bulkley* v. *Klein, supra.*)

We observe further that even were Collins deemed to have been falsely arrested it is nevertheless the certain law of this state that no liability would have attended the conduct of either of the police officers of the case. For as said in *Vallindras* v. *Massachusetts etc. Ins. Co.,* 42 Cal.2d 149, 154 [265 P.2d 907]:

"It is [the officer's] duty to execute the orders of the court unless they are patently irregular and void. In determining whether process and orders are 'regular on their face' so far as the liability of such an officer is concerned, the following statement from *Aetna Ins. Co.* v. *Blumenthal* (1943), 129 Conn. 545, 553 [29 A.2d 751, 754] is pertinent: 'When we speak of process "valid on its face," in considering whether it is sufficient to protect an officer, we do not mean that its validity is to be determined upon the basis of scrutiny by a trained legal mind; nor is it to be judged in the light of facts outside its provisions which the officer may know.

[Citations.] Unless there is a clear absence of jurisdiction on the part of the court or magistrate issuing the process, it is sufficient if upon its face it appears to be valid in the judgment of an ordinarily intelligent and informed layman. To hold otherwise would mean that an officer must often act at his peril or delay until he has had an opportunity to search out legal niceties of procedure and, as said in *Anderson* v. *Dewey* [(1917), 91 Conn. 510, 514 [100 A. 99]] . . . , "A result subjecting him to constant danger of liability would be an intolerable hardship to him, and inevitably detract from the prompt and efficient performance of his public duty." ' " (See also *Hayward Lumber & Inv. Co.* v. *Biscailuz,* 47 Cal.2d 716, 722 [306 P.2d 6]; *People* v. *Weitzer,* 269 Cal.App.2d 274, 294-295 [75 Cal.Rptr. 318]; *Lincoln* v. *Didak,* 162 Cal.App.2d 625, 629 [328 P.2d 498].)

■  The evidence before the superior court could do no more than establish that Officer Brady was guilty, with malice, of the "groundless institution of criminal proceedings." Adopting the language of Professor Prosser: *"He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, . . ."* (See *Bulkley* v. *Klein, supra,* 206 Cal.App.2d, p. 746; italics added.)

By virtue of Government Code section 821.6 (see p. 676, *ante*), even if Collins had elected to proceed on the theory of malicious prosecution, his proof at the summary judgment proceedings tended to establish no triable issue or cause of action against Officer Brady, or his employer, defendant City and County of San Francisco, for that offense. The superior court properly granted the city's motion for a summary judgment.

It may be, as contended by Collins, that the rule we here apply operates harshly. It is however an expression of a governmental policy reached with full consideration of the competing values and interests concerned. In *White* v. *Towers,* 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636], it was said:

"[W]e believe that sound reasons of public policy require that a peace officer, or other comparable official, be shielded by the cloak of immunity from civil liability for alleged malicious prosecution. At the outset, we are faced with an apparent conflict between the public policy of protecting individual citizens from oppressive official action and the equally well established policy of promoting the fearless and effective administration of the law for the whole people by protecting public

officers from vindictive and retaliatory damage suits. However, we feel that both policies may at once be subserved by refusing to permit civil actions against the officer for alleged malicious prosecution and remanding the offended individual to his remedy under the penal statutes. . . .

"We are not impressed with the argument that to extend such immunity to peace officers is a major step toward 'statism.' Such argument erroneously assumes that our law enforcement agencies are rife with persons who will abuse their powers, and that the imposition upon law enforcement officers of civil liability for alleged malicious prosecution is necessary to curb such abuse. But as has been said with respect to public prosecutors: 'There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the [peace officer] is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct or of being ousted from office on that account.' (*Smith* v. *Parman,* 101 Kan. 115, 117 [165 P. 663, L.R.A. 1917F 698].)

"We are aware of the fact that in thus surrounding peace officers with immunity in cases of this sort, hardship may result to some individuals. However, experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action for alleged malicious prosecution." (See also *Hardy* v. *Vial,* 48 Cal.2d 577, 582-583 [311 P.2d 494]; *Johnson* v. *City of Pacifica,* 4 Cal.App.3d 82, 87 [84 Cal.Rptr. 246]; *Shakespeare* v. *City of Pasadena,* 230 Cal.App.2d 375, 383 [40 Cal.Rptr. 863]; *Gregoire* v. *Biddle,* 177 F.2d 579, 580-581.)

We have considered the many authorities tendered us by Collins. None, in our opinion, tends in any significant way to impugn the conclusions we have reached.

For these several reasons the summary judgment in favor of defendant City and County of San Francisco is—

Affirmed.

Elkington, J., and Weinberger, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 9, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.