[Civ. No. 39236. First Dist., Div. Three. May 19, 1977.]

*PAULO REYNA, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

*Reporter's Note: This case was previously entitled "Tyrrell v. City and County of San Francisco."

878

**COUNSEL**

Edwin Train Caldwell for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, and Philip S. Ward, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**EMERSON, J.\***—Paulo Reyna (hereafter appellant) joined as a plaintiff in a suit against the City and County of San Francisco, claiming damages for the wrongful death of his unborn child, a viable fetus. The general demurrer of a codefendant was sustained without leave to amend and it was stipulated that a similar ruling would be deemed to have been made with respect to the city. The order sustaining the demurrer was duly filed, but no judgment has been entered. This appeal is from "the judgment."

■ No appeal lies from an order sustaining a demurrer without leave to amend. (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856 [279 P.2d 8].) Under certain circumstances, however, such appeals have been recognized by appellate courts. Factors justifying such consideration have been the interests of justice, the prevention of delay and the fact that it clearly appeared that the trial judge unmistakenly contemplated that a formal judgment was to be prepared, signed and filed. (See *Beazell* v. *Schrader* (1963) 59 Cal.2d 577 [30 Cal.Rptr. 534, 381 P.2d 390]; *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60]; *Norkin* v. *United States Fire Ins. Co.* (1963) 219 Cal.App.2d 287 [33 Cal.Rptr. 51].)

In the instant case, all of these factors are present, plus an additional one; it was stipulated below that this case might be considered as though appellant's causes of action had been dismissed. We therefore follow the lead of the Supreme Court, and will deem the filed order to incorporate an order of dismissal, and will interpret appellant's notice of appeal as applying to the dismissal. (See *Beazell* v. *Schrader, supra,* at p. 580.)

*Questions Presented*

I

*May the parents of an unborn child maintain*
*an action for its wrongful death under Code*
*of Civil Procedure section 377?*

■ The California "wrongful death" statute, Code of Civil Procedure section 377 (hereafter section 377), reads in relevant part: "When the death of a person is caused by the wrongful act or neglect of another, his

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death. . . ." The question immediately raised is whether unborn children are included within the meaning of "person" as that word first appears in the code section.

Prior cases and legislative history compel the conclusion that unborn children are not persons within the meaning of section 377.

This rule is established by the cases of *Norman* v. *Murphy* (1954) 124 Cal.App.2d 95 [268 P.2d 178], and *Bayer* v. *Suttle* (1972) 23 Cal.App.3d 361 [100 Cal.Rptr. 212]. At the time when these cases were decided, the classification of decedents in section 377 differed slightly from its present form, the section then reading, as pertinent: "When the death of a person not being a minor, or when the death of a minor person who leaves surviving him either a husband or wife or child or children or father or mother, is caused by the wrongful act or neglect of another. . . ."

The decisions in both *Norman* and *Bayer*, that unborn children are not included as decedents, were based partly on the construction of the word "minor" and partly on Civil Code section 29 (hereinafter section 29), which defines certain rights of unborn children. The former basis is no longer useful, because minority is no longer distinguished in section 377. The latter basis remains, and is no less compelling than it was formerly. Section 29 provides, in part: "A child conceived, but not yet born, is to be deemed an existing person, *so far as may be necessary for its interests* in the event of its subsequent birth. . . ." (Italics added.)

The "limited purpose" of section 29, having to do only with the unborn child's interests, does not affect the wrongful death statute. The latter provides a cause of action in certain survivors, to compensate *their* loss, not the decedent's. (55 Cal.Jur.2d (1960) Wrongful Death, § 10, pp. 403-404.) The cause of action is not derivative. (*Id.*)

As stated in *Bayer*, "In the interpretation of statutes, every word, phrase, or provision is presumed to be intended by the Legislature to have meaning and perform a useful function. [Citation.] If an unborn child is legally a person there would be no useful function to be performed by the section in deeming the child a person for this one limited purpose." (23 Cal.App.3d at p. 364.)

An additional reason given in the *Bayer* decision was that the Legislature had amended section 377 after *Norman,* without providing for a cause of action upon the death of an unborn child. "We recognize the significance," said the *Bayer* court, "of the legislative inaction in the light of pertinent judicial precedent." (23 Cal.App.3d at p. 364.)

The further amendment in 1975, after *Bayer,* also failed to specify such a cause of action, though it did remove the minority-majority distinction. Thus there is further reason to believe that the Legislature means not to grant a cause of action to survivors of unborn children.

We conclude, therefore, that section 377 does not provide a cause of action for the wrongful death of an unborn child. We limit this decision to the case of a child whose death was caused before its delivery commenced. We do not consider the situation where the death of the child occurs during the course of its actual birth.

II

*Since section 377 does not grant a
cause of action for the death of an
unborn child, is the section to that
extent unconstitutional as a denial
of equal protection of the laws?*

Insofar as the right to equal protection of the laws is concerned, the parties agree that the classification at issue here is a distinction between parents of unborn children and parents of other children. We turn first to the issue of whether or not parents of unborn children constitute a "suspect class," thus subjecting the classification to the "strict scrutiny" test. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].) The United States Supreme Court has described a suspect class as one which has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 28 [36 L.Ed.2d 16, 40, 93 S.Ct. 1278]; *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307 [49 L.Ed.2d 520, 96 S.Ct. 2562].) Underlying all suspect classifications is "the stigma of inferiority and second class citizenship associated with them." (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 19 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) It is

readily apparent that the parents of unborn children do not fall into such a category.

The proper test, therefore, is that stated by our Supreme Court in *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115 (app. dism., 420 U.S. 916 [43 L.Ed.2d 387, 95 S.Ct. 1108]) at pages 123-124: "Rather the classification must be upheld against attack on equal protection grounds if the ' "distinctions drawn by [the] challenged statute bear some rational relationship to a conceivably legitimate state purpose." ' (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; see also *Kotch* v. *Pilot Comm'rs* (1947) 330 U.S. 552, 556 [91 L.Ed. 1093, 1096-1097, 67 S.Ct. 910].)" ■ Under this test, the legislative classification involved is clothed with a presumption of constitutionality unless it is found to be wholly arbitrary. The only requirement is that the distinction drawn by the challenged statute bear some rational relationship to a conceivable legitimate state purpose. (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d at p. 784; see *McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101].)

■ In passing upon the reasonableness of the classification, consideration must also be given to the kind of injury which the wrongful death statute is intended to redress. ■ Since its original enactment, section 377 has always been construed as permitting recovery only for the pecuniary loss suffered by the plaintiff. As our Supreme Court said in *Dickinson* v. *Southern Pacific Co.* (1916) 172 Cal. 727, 730 [158 P. 183]: "The action is based on section 377 of the Code of Civil Procedure. At common law no remedy was given for injuries causing death. The right of the survivors to recover in such cases is purely statutory. It is thoroughly settled by many decisions in this state and elsewhere that a plaintiff, suing under a statute like section 377, 'does not represent the right of action which the deceased would have had if the latter had survived the injury, but can recover only for the pecuniary loss suffered by the plaintiff [or the heirs represented by him] on account of the death of the relative; that sorrow and mental anguish caused by the death are not elements of damage; and that nothing can be recovered as a *solatium* for wounded feelings.' "

■ The question then becomes, is there a rational distinction (from the point of view of the statute's purpose to compensate persons pecuniarily injured by their death) between the parents of minors as a

whole and the prospective parents of unborn children? We conclude that there is. It is obvious that in other than exceptional cases, the factors which make it "manifestly difficult to measure" the pecuniary loss suffered by parents become increasingly troublesome as the age of the wrongful death decedent diminishes. Though the age at which the offsetting expenses do not manifestly outweigh any prospective receipt of earnings and services may fluctuate widely, it is difficult to conceive of an infant who does not in this respect constitute a financial burden. The drawing of the line, however, by the Legislature at any given age would necessarily be arbitrary. The Legislature could, however, reasonably assume that in the case of an unborn child, the cost to the parent of supporting and educating the child will certainly exceed any expected direct monetary contribution in return.

Comparable considerations justify classifying differently the relationship between a prospective parent of an unborn child and the relationship between a parent and a minor child in respect of the pecuniary loss resulting from their severance. There is no doubt a very real relationship between an expectant parent and an unborn child. This relationship is, however, one characterized by an "absence of social relations." Consequently, any award of damages by virtue of severing that relationship would amount to compensation only for the "mental anguish caused by the death" which is not an element of damage that the statute sought to make compensable.

We conclude, therefore, that under the rational basis test applicable herein, section 377 as construed above does not violate equal protection.

In view of this disposition it is unnecessary to consider appellant's remaining contention, which relates to the distinction between married and unmarried fathers.

The judgment is affirmed.

Scott, Acting P. J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.