[No. A024177. First Dist., Div. Two. Oct. 16, 1986.]

RAYMOND RANDLE, JR., Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

450

COUNSEL

Thomas M. Meyer for Plaintiff and Appellant.

George Agnost, City Attorney, Kenneth J. Harrington and Philip S. Ward, Deputy City Attorneys, for Defendants and Respondents.

OPINION

**KLINE, P. J.**—Raymond Randle, Jr., brought a civil action against respondents City and County of San Francisco (hereinafter City), Assistant

District Attorney William Fazio, and Police Inspector Martin Bastiani, seeking damages for injuries resulting from respondents' alleged suppression of exculpatory evidence during appellant's prosecution for rape. The trial court sustained without leave to amend respondents' demurrer to appellant's amended complaint, except as to a single cause of action against the City, and this appeal followed.

## STATEMENT OF FACTS

A demurrer admits all material and issuable facts properly pleaded. (*Daar* v. *Yellow Cab. Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 898, p. 338.) According to the amended complaint, appellant was convicted on July 28, 1980, of committing forcible oral copulation (Pen. Code, § 288a, subd. (c)) against Susan Elizabeth Bird. Bird testified at trial that she was forced by appellant to engage in sex; appellant testified that Bird offered him sexual favors in exchange for money and that they engaged in consensual sex. Appellant's conviction was overturned because of newly discovered and excluded evidence discrediting Bird's testimony. (*People* v. *Randle* (1982) 130 Cal.App.3d 286, 294, 296 [181 Cal.Rptr. 745].)[1] Appellant was not reprosecuted.

The amended complaint alleges that on or about May 2, 1980, during the time the preliminary hearing was being conducted in the Randle case, San Francisco Police Officer Jay Smoot investigated an incident in a San Francisco parking lot in which a woman identifying herself as "Elizabeth" reported having been raped, beaten and robbed at gun point by two Black men whose vehicle she had voluntarily entered in order to smoke marijuana. She refused to give her last name or address, telling Officer Smoot that she did not want to reveal her identity because she did not want to jeopardize a San Francisco rape case in which she was testifying on May 1 and 2.

Officer Smoot wrote an incident report which he forwarded to the San Francisco Police Department Record Room, and made telephone calls from

---

[1]The newly discovered evidence consisted of 20 declarations by people familiar with the witness' reputation addressing "(1) Complainant's reputation for and instances of soliciting public sex acts in exchange for money, drugs, and drinks; (2) complainant's accounts of the March 6 incident which contradicted her testimony at trial; and (3) complainant's reputation for dishonesty and theft, including specific instances thereof." (*People* v. *Randle, supra,* 130 Cal.App.3d at p. 292.) The excluded evidence was testimony that, on two prior occasions at the bar where the witness met appellant, she had falsely complained of having her purse snatched and having been kidnapped. (*Id.,* at p. 295.) The court concluded that the excluded evidence and evidence discovered between the time of jury verdict and new trial motion required reversal because the case was "peculiarly a credibility case" in which a different result would probably occur on retrial. (*Id.,* at p. 296.)

which he ascertained that there was a pending rape case in which "Elizabeth" was testifying, and that "Elizabeth" was Bird, the witness in the *Randle* case. He is alleged to have brought this information to the attention of employees of the City, including Bastiani, "the officer in charge of" the pending *Randle* case. Shortly thereafter, a San Francisco police officer came to Officer Smoot's residence with a photograph of Bird, which Smoot identified as the person about whom his incident report had been written.

The complaint alleges that the information in Smoot's report was clearly exculpatory in that it supported appellant's defense theory and cast doubt on the credibility of Bird's allegations. The report was never made known to appellant, despite a standing discovery order which required the district attorney and his agents, such as members of the police department, to make available to appellant all exculpatory information, including that which would potentially impeach a witness. Appellant first learned of the incident report in a phone call from Officer Smoot on or about March 3, 1982. He filed claims for damages under Government Code sections 911.2 and 915 which were rejected by the City.

Appellant's civil complaint contains four state and one federal cause of action, all based on respondents' failure to provide him with the allegedly exculpatory evidence.[2] The trial court sustained without leave to amend defendants' demurrers except that of the City to the fifth (federal) cause of action.

## DISCUSSION

### I.

### *Appealability*

Initially, we address respondents' argument that this appeal should be dismissed because it was taken from the nonappealable order on respondents'

---

[2] The complaint alleges that defendants' conduct in not providing appellant with the information in Smoot's report directly and proximately resulted in his conviction and expenses including $13,500 for posting bail on appeal, $27,000 attorney's fees in connection with his appeal and potential reprosecution after the appeal was overturned, and $3,500 in fees for investigative services.

Appellant seeks damages for expenses incurred in defending his appeal and for emotional distress and inability to engage in his usual employment, and punitive damages against defendants Fazio and Bastiani.

demurrer. ■ An order sustaining a demurrer is not an appealable order. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920 [167 Cal.Rptr. 831, 616 P.2d 813]; *Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8].) In some circumstances, however, an appeal taken from such an order will be entertained in the interests of justice and prevention of delay. (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 579-580 [30 Cal.Rptr. 534, 381 P.2d 390]; *Reyna* v. *City and County of San Francisco* (1977) 69 Cal.App.3d 876, 879 [138 Cal.Rptr. 504].)

Rules established in somewhat different contexts militate in favor of hearing the present appeal. Where a judgment fails to dispose of a cause of action to which a demurrer has been sustained, the appellate court may amend the judgment to include a dismissal of the cause of action when "'the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial.'" (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 921, quoting *Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 154 [133 Cal.Rptr. 10, 554 P.2d 330].) When a judgment fails to dispose of all causes of action set forth in the complaint, an appeal need not be dismissed if the judgment resolves all issues as to the appealing party. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122].) Finally, orders denying leave to amend a complaint, denying substitution of parties, and granting motions to strike parts of a pleading, although ordinarily not appealable, are appealable where the orders "have the effect of eliminating issues between a plaintiff and defendant so that nothing is left to be determined . . . ." (*Ingram* v. *Superior Court* (1979) 98 Cal.App.3d 483, 489 [159 Cal.Rptr. 557]; *Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 677 [268 P.2d 1062]; *Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237, 241 [173 Cal.Rptr. 345].)

In the present case, the fact that the trial court sustained respondents' demurrer without leave to amend reveals a clear intention to make a final ruling. (*Wilson* v. *Household Finance Corp.* (1982) 131 Cal.App.3d 649, 651 [182 Cal.Rptr. 590].) The order fully resolved all issues concerning respondents Fazio and Bastiani. The sole remaining cause of action alleges a pattern and practice by the City which violated appellant's rights under 42 United States Code section 1983. That claim is independent of those involved in this appeal; it requires different proof and cannot result in liability of the individual respondents. The case being fully briefed, there appears no reason to delay decision and we therefore amend the order to include a judgment of dismissal as to causes of action one through four and six.[3] (*Wilson* v. *Household Finance Corp., supra,* 131 Cal.App.3d at pp. 651-

[3]The sixth cause of action seeks punitive damages against the individual defendants.

652; *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 289 fn. 1 [142 Cal.Rptr. 429, 572 P.2d 43].)

## II.

### State Causes of Action

The amended complaint contains two state causes of action based on the conduct of respondent Bastiani and two based on that of respondent Fazio. (The causes of action involving Bastiani assume he did not convey the information in question to Fazio; the causes of action involving Fazio, which are stated in the alternative, proceed upon the opposite assumption.) The first cause of action, against the City and Bastiani, alleges negligent performance of a ministerial duty under a superior court discovery order to bring the information in Officer Smoot's report to the attention of the district attorney's office. The third cause of action, against the City and Fazio, similarly alleges negligent performance of a ministerial duty to provide appellant with exculpatory evidence. The second cause of action, against the City and Bastiani, and the fourth cause of action, against the City and Fazio, each attempt to state causes of action under Government Code section 815.6,[4] alleging respondents' failure to use reasonable diligence in discharging mandatory duties imposed upon them by applicable laws and regulations.[5]

As we will explain, appellant's recovery on these state causes of action is precluded by the immunity provision in Government Code section 821.6: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." This section applies to police officers as well as public prosecutors since both are public employees within the meaning of the Government Code.[6]

---

[4]Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[5]The second cause of action refers to a mandatory duty imposed by "applicable regulations of the San Francisco Police Department" and by a superior court discovery order not to suppress evidence and to bring exculpatory evidence to the attention of the district attorney's office.

The fourth cause of action refers to a duty under "Penal Code [section] 859, regulations and other enactments having the force of law," and under the discovery order, to provide appellant with exculpatory evidence.

[6]The Government Code defines "public employee" as "an employee of a public entity," (§ 811.4) and "public entity" as including "the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." (§ 811.2.)

(*Johnson* v. *City of Pacifica* (1970) 4 Cal.App.3d 82, 85 [84 Cal.Rptr. 246].)

Appellant suggests that section 821.6 immunizes only conduct analogous to the tort of malicious prosecution. Although the section is principally used for suits for damages for malicious prosecution, however, it is not limited to that use. (*Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491, 497 [203 Cal.Rptr. 33] [libel suit concerning publication of disciplinary action against physician after institution of proceedings and before dismissal of the action]; *Brown* v. *City of Los Angeles* (1968) 267 Cal.App.2d 849, 850-851 [73 Cal.Rptr. 364] [suit for damages from erroneous notice of zoning violations causing plaintiff to close business].)

The cases which appellant discusses as limiting the immunity under section 821.6 do so in the specific context of distinguishing actions for malicious prosecution from ones for false arrest or false imprisonment. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527; *Laible* v. *Superior Court* (1984) 157 Cal.App.3d 44 [203 Cal.Rptr. 513].) False arrest or imprisonment and malicious prosecution are mutually inconsistent concepts, the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority. (*Collins* v. *City and County of San Francisco* (1975) 50 Cal.App.3d 671, 676 [123 Cal.Rptr. 525].) Liability for false arrest and imprisonment is specifically retained in the Government Tort Claims Act in section 820.4.[7] (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at p. 721.) While appellant's cases, therefore, preclude application of section 821.6 to suits for false arrest or imprisonment, they do not preclude its application to suits alleging conduct other than malicious prosecution which comes within the terms of the immunity provision.

Section 821.6 immunizes public employees from suits for injuries caused by the employee's "instituting or prosecuting" a judicial or administrative proceeding. By its terms, the provision encompasses conduct during an ongoing prosecution and not solely that leading up to the institution of a prosecution.[8] (Cf. *Kayfetz* v. *State of California, supra,* 156 Cal.App.3d

---

[7]Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. *Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.*" (Italics added.)

[8]Black's Law Dictionary defines "prosecute" as follows: "To follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. *To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion.*" (Italics added.)

491, 498; *Novoa* v. *County of Ventura* (1982) 133 Cal.App.3d 137, 143 [183 Cal.Rptr. 736].) Here, the act which forms the basis of appellant's case is the suppression of evidence, either by the prosecutor or by the police officer in failing to bring the report to the prosecutor's attention. Such act is clearly within the scope of employment of the individual respondents: Fazio as district attorney and Bastiani as investigating officer for the prosecution were both necessarily involved in handling the evidence in this case.[9] That the complaint alleges improper conduct regarding the evidence does not alter the fact that the acts alleged fall within the scope of employment. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 583 [311 P.2d 494, 66 A.L.R.2d 739].) To hold otherwise would mean that an impropriety which provides a basis for liability would also provide a basis for vitiating immunity from such liability, thus making a mockery of section 821.6.

■ The policy advanced by the legislative provision of immunity for malicious prosecution suits against public officials is one of promoting vigorous law enforcement without fear of harassment through civil suits. "'. . . At the outset, we are faced with an apparent conflict between the public policy of protecting individual citizens from oppressive official action and the equally well established policy of promoting the fearless and effective administration of the law for the whole people by protecting public officers from vindictive and retaliatory damages suits. However, we feel that both policies may at once be subserved by refusing to permit civil actions against the officer for alleged malicious prosecution and remanding the offended individual to his remedy under the penal statutes . . . . [¶] . . . [¶] We are aware of the fact that in thus surrounding peace officers with immunity in cases of this sort, hardship may result to some individuals. However, experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action for alleged malicious prosecution.'" (*Collins* v. *City and County of San Francisco, supra,* 50 Cal.App.3d 671, 678-679, quoting *White* v. *Towers* (1951) 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636].) This policy no less requires protection of prosecutors and law enforcement officers from suits concerning their handling of prosecutions not maliciously commenced or maintained. It would be anomalous to suppose the Legislature meant to immunize malicious acts in connection with a prosecution yet leave public employees amenable to suit for wrongful but nonmalicious acts which result in injury.

---

[9]Thus, a prosecutor is immune from suit under the federal civil rights statutes even for withholding exculpatory evidence from the defense (*Imbler* v. *Pachtman* (1976) 424 U.S. 409, 425, 431-432 fn. 34 [47 L.Ed.2d 128, 140-141, 144, 96 S.Ct. 984]), and both prosecutors and police officers are immune from suit for concealing evidence under the California Government Code. (*Stevens* v. *Rifkin* (N.D. Cal. 1984) 608 F.Supp. 710, 729 [claims against prosecutors and police officers for malicious prosecution and improper acts concerning evidence "pertain to prosecution activities of law enforcement and prosecuting authorities"].)

██    We conclude that Government Code section 821.6 immunizes respondents Fazio and Bastiani,[10] from suit on the state causes of action alleged in the first through fourth causes of action.[11]

## III.

### *Federal Cause of Action*

Appellant's fifth cause of action alleged violation of his civil rights under 42 United States Code section 1983. The trial court sustained the individual respondents' demurrer to this cause of action on the ground that their conduct was immunized under United States Supreme Court precedent interpreting 42 United States Code section 1983.    ██    Appellant concedes that Fazio enjoys prosecutorial immunity under Ninth Circuit interpretation of the decision in *Imbler* v. *Pachtman, supra,* 424 U.S. 409 [47 L.Ed.2d 128] (see *Demery* v. *Kupperman* (9th Cir. 1984) 735 F.2d 1139, cert. den. (1985) 469 U.S. 1127 [83 L.Ed.2d 803, 105 S.Ct. 810] [prosecutorial immunity for pre- and post-litigation handling of case]; *Ybarra* v. *Reno Thunderbird Mobile Home Village* (9th Cir. 1984) 723 F.2d 675 [prosecutorial immunity for acts related to preparation of case]), but argues that Police Officer Bastiani is not similarly immune. We must agree.

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." (42 U.S.C. § 1983.) Enacted to aid in

---

[10]We note that appellant does not here contest the trial court's ruling as to the City.

[11]The trial court's order sustaining respondents' demurrer to the amended complaint does not state reasons for the ruling on the first four causes of action. The parties' arguments to this court are based on the reasoning elaborated in the order sustaining with leave to amend the demurrer to the original complaint. In that order, the trial court sustained respondents' demurrer to the first and third causes of action (negligence) on the basis of section 821.6 immunity. The demurrer to the second and fourth causes of action, however, was sustained for failure to state a claim because no specific duty imposed by an enactment had been alleged.

There is no apparent reason why the state causes of action should be treated differently on the immunity question. Whether stated in terms of negligence or breach of mandatory duty, the underlying act complained of is the same in all causes of action. The only difference we discern is that the second and fourth causes of action are based on a statutory liability under the Government Code. Applicable immunity provisions of the Tort Claims Act, however, generally prevail over liability provisions (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.26, p. 67), and we find no qualification in the immunity provided by section 821.6.

Given this conclusion as to the individual respondents' immunity, it is unnecessary for us to determine whether the amended complaint in fact sufficiently stated a cause of action under section 815.6.

"'the preservation of human liberty and human rights,'" the statute "reflects a congressional judgment that a 'damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees.'" (*Gomez* v. *Toledo* (1980) 446 U.S. 635, 638-639 [64 L.Ed.2d 572, 576, 100 S.Ct. 1920], quoting *Owen* v. *City of Independence* (1980) 445 U.S. 622, 651 [63 L.Ed.2d 673, 693, 100 S.Ct. 1398].) "As remedial legislation, § 1983 is to be construed generously to further its primary purpose." (*Id.*, at p. 639 [64 L.Ed.2d at pp. 576-577].)

■ "On its face § 1983 admits no immunities. But since 1951, [the United States Supreme Court] has consistently recognized that substantive doctrines of privilege and immunity may limit the relief available in § 1983 litigation." (*Tower* v. *Glover* (1984) 467 U.S. 914, 920 [81 L.Ed.2d 758, 764, 104 S.Ct. 2820].) "Section 1983 immunities are 'predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.'" (*Ibid.*, quoting *Imbler* v. *Pachtman, supra,* 424 U.S. 409, 421 [47 L.Ed.2d 128, 138].) The Supreme Court has followed a two-step analysis, asking whether "an official was accorded immunity from tort actions when the Civil Rights Act was enacted in 1871" and, if so, "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions" (*Malley* v. *Briggs* (1986) 475 U.S. 335 [89 L.Ed.2d 271, 277, 106 S.Ct. 1092, 1095] [qualified immunity for police officers seeking arrest warrants]; *Tower* v. *Glover, supra,* 467 U.S. 914, 920-922 [81 L.Ed.2d 758, 764-766] [no immunity for public defenders]; *Imbler* v. *Pachtman, supra,* 424 U.S. at pp. 424-429 [47 L.Ed.2d at pp. 140-143] [prosecutorial immunity]; *Briscoe* v. *LaHue* (1983) 460 U.S. 325, 329-341 [75 L.Ed.2d 96, 104-111, 103 S.Ct. 1108] [witness immunity]; *Pierson* v. *Ray* (1967) 386 U.S. 547, 553-555 [18 L.Ed.2d 288, 294-295, 87 S.Ct. 1213] [judicial immunity]).

■ "The common law has never granted police officers an absolute and unqualified immunity." (*Pierson* v. *Ray, supra,* 386 U.S. at p. 555 [18 L.Ed.2d at p. 295] [good faith and probable cause defenses for police in false arrest action under § 1983].) Respondents' argument, however, is that Bastiani should be covered by *prosecutorial* immunity because of his "intimate association" with appellant's prosecution. This argument, like the trial court's order, is based on an interweaving of the decisions in *Imbler* v. *Pachtman, supra,* 424 U.S. 409, holding a prosecutor immune from suit under section 1983 for acts involved "in initiating a prosecution and in presenting the State's case" (424 U.S. at p. 431 [47 L.Ed.2d at p. 144]),[12] and *Briscoe* v. *LaHue, supra,* 460 U.S. 325 [75 L.Ed.2d 96], holding that

---

[12]The specific conduct alleged in *Imbler* included eliciting of false testimony and suppression of evidence. (*Id.*, at pp. 415-416, 431-432 fn. 34 [47 L.Ed.2d at pp. 135, 144].)

police officers testifying at trial have absolute immunity from suit based on perjured testimony.[13]

Neither these two cases nor the policies they discuss support an extension of absolute immunity to Bastiani. *Imbler* focuses on the prosecutor as advocate for the People, on the public trust of the prosecutor's office and the exercise of judgment inevitably involved in deciding whether to commence a criminal case and, if so, the manner in which it should be conducted. (424 U.S. at pp. 424-425 [47 L.Ed.2d at p. 140].) Like the considerations deemed to justify prosecutorial immunity under the common law, prosecutorial immunity under section 1983 reflects "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." (424 U.S. at p. 423 [47 L.Ed.2d at p. 139].) Moreover, civil liability is not the only means to deter misconduct, as prosecutors remain subject to criminal law and to professional discipline. (424 U.S. at pp. 428-429 [47 L.Ed.2d at pp. 142-143].)

*Briscoe* v. *LaHue* primarily addresses the policy concerns underlying witnesses' testimony, with protection from fear of subsequent suit being the means to encourage witnesses to come forward to testify, and to testify candidly. (460 U.S. at pp. 332-334 [75 L.Ed.2d at pp. 105-107].) The court observes, in this connection, that "[a] police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury." (460 U.S. at p. 342 [75 L.Ed.2d at p. 112].) Accordingly, police officer witnesses are entitled to the same immunity enjoyed by other witnesses. (460 U.S. at pp. 345-346 [75 L.Ed.2d at p. 114].)

Respondents' immunity argument is based on the theory that the only difference between Fazio and Bastiani with respect to disclosure of excul-

---

[13]The trial court's order explains its ruling as to Bastiani: "The implication of sustaining the demurrer as to the defendant Bastiani is not that police officers and inspectors necessarily enjoy immunity from prosecution for all of their actions during the course of an investigation. However, the misconduct of Inspector Bastiani alleged here was so 'intimately associated with the judicial phase of the criminal process,' *Imbler* v. *Pachtman* (1976), 424 U.S. 409, 430, that his conduct must be deemed subject to an absolute immunity from liability under 42 U.S.C. section 1983. It would seem to follow from *Briscoe* v. *LaHue* (1983), 51 U.S.L.W. 4247, that the decision in *Imbler* v. *Pachtman, supra,* must extend to police inspectors participating in the prosecution of the criminal action. Since Inspector Bastiani would have enjoyed immunity had he testified at trial and misleadingly withheld disclosure of the assertedly exculpatory information contained in Officer Smoot's Incident Report, his liability should be no greater because his only omission was the failure voluntarily to come forward with that information without testifying falsely."

patory evidence is one of job title and, therefore, that Bastiani should benefit from the same prosecutorial immunity. Although both *Imbler* and *Briscoe* command a focus on activities rather than status in determining section 1983 immunities (*Imbler, supra,* 424 U.S. at pp. 430-431 [47 L.Ed.2d at pp. 143-144]; *Briscoe, supra,* 460 U.S. at p. 342 [75 L.Ed.2d at p. 112]), the functional analyses of these cases do not support respondents' theory.

In *Imbler* the functional inquiry is undertaken in the course of defining the boundaries of prosecutorial immunity. The court notes approvingly that the Court of Appeals had scrutinized the functional nature of the prosecutor's activities to determine if they were an "integral part of the judicial process," leaving standing a rule that a prosecutor engaged in certain investigative activities enjoys only the good faith defense available to a policeman. (424 U.S. at pp. 430-431 [47 L.Ed.2d at pp. 143-144], cf., e.g., *Robichaud* v. *Ronan* (9th Cir. 1965) 351 F.2d 533, 537.) The analysis thus refines the immunity allowed a prosecutor, explaining that a prosecutor acting as a policeman may not escape liability simply because he retains his status as a prosecutor. *Briscoe* similarly addresses the functional equivalence of roles, apart from status, in rejecting the argument that police officer witnesses should be treated differently from lay witnesses. (460 U.S. at p. 342 [75 L.Ed.2d at p. 112].)

■ To say that a police officer performing the acts alleged in the present case is functionally equivalent to a prosecutor, however, would extend immunity to an official who does not occupy the public trust of the prosecutor's office and is neither authorized to make the discretionary decisions involved in presenting the state's case in court nor under any duty as an officer of the court. Because of the unique office of the public prosecutor in preparing and presenting a case for trial, a police officer simply cannot be regarded as functionally equivalent to a prosecutor in the same way a police officer witness is equivalent to other witnesses (cf. *Briscoe, supra,* 460 U.S. 325), or a prosecutor in certain roles is equivalent to a police officer. (Cf. *Imbler, supra,* 424 U.S. at pp. 430-431 [47 L.Ed.2d at pp. 143-144].)[14] Although a police officer may be active in a prosecution, the activity

---

[14]The United States Supreme Court has stressed the uniqueness of the prosecutor's role in discussing the safeguards other than civil liability which serve to control prosecutorial misconduct: "The organized bar's development and enforcement of professional standards for prosecutors also lessens the danger that absolute immunity will become a shield for prosecutorial misconduct. As we observed in *Imbler,* 'a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers.' 424 U.S., at 429, 96 S.Ct., at 994 (footnote omitted). The absence of a comparably well developed and pervasive mechanism for controlling police misconduct weighs against allowing absolute immunity for the officer." (*Malley* v. *Briggs, supra,* 475 U.S. 335 [89 L.Ed.2d at pp. 279-280, 106 S.Ct. at p. 1097, fn. 5].)

*Malley* rejected an attempt to analogize police officers' and prosecutors' conduct in initiating

is of an investigatory nature rather than being an "integral part of the judicial process." (*Imbler, supra,* 424 U.S. at p. 430 [47 L.Ed.2d at p. 143].) Indeed, the Sixth Circuit has held that a law enforcement officer active in a prosecution may be liable in a § 1983 suit for suppression of evidence even though the prosecutor may not. (*Hilliard* v. *Williams* (6th Cir. 1976) 540 F.2d 220.)[15]

While *Briscoe,* in addition to its focus on police officers as functionally similar to other witnesses,[16] states that the police officer witness might alternatively "be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding." (460 U.S. at p. 336 [75 L.Ed.2d at p. 108].) But even on this prong of the analysis—left undeveloped in *Briscoe*—the officer-as-witness plays an in-court role, whereas Bastiani's alleged conduct occurred outside the reach of any safeguard stemming from the judicial process.[17] *Briscoe* does not, therefore, provide

---

a criminal prosecution. (*Id.,* at pp. 340-346 [89 L.Ed.2d at pp. 278-281, 106 S.Ct. at pp. 1096-1098].) Although not directly controlling of the present case because of its focus on the officials' specific roles in pre-prosecution activities, *Malley's* discussion of the difference between prosecutors and police officers with respect to common law immunity and roles in the judicial process (*ibid.*) counsels against extending absolute immunity to a police officer simply because he is alleged to have been actively involved with an on-going prosecution.

Respondent would have us distinguish the present case from *Malley* because the police officer there was acting independently of a prosecutor while Bastiani was acting under Fazio's supervision. (Letter of Aug. 1, 1986, pp. 1-3.) What is alleged here, however, is that Bastiani failed to give evidence to Fazio, an act necessarily performed independently of the prosecutor.

[15]*Hilliard* involved a suit against a prosecutor and criminal investigations agent for suppression of evidence and false testimony by the agent at trial. In a pre-*Imbler* decision, the Sixth Circuit held that neither defendant was immune from suit. (*Hilliard* v. *Williams* (6th Cir. 1975) 516 F.2d 1344, cert. den. 423 U.S. 1066 [46 L.Ed.2d 656, 96 S.Ct. 805].) Later, following *Imbler,* the court reversed its holding as to the prosecutor but not as to the agent (540 F.2d 220), despite the fact that the court viewed the agent as having "also played an active role in the prosecution." (*Hilliard* v. *Williams, supra,* 516 F.2d 1344, 1350.)

Appellant's brief refers to respondents' argument to the trial court that the *Briscoe* opinion effectively overruled *Hilliard,* and contends that the Supreme Court at most rejected *Hilliard's* holding regarding testimony at trial. (540 F.2d 220.) *Hilliard* is cited in a footnote in *Briscoe* dealing with federal courts of appeals' rules regarding absolute witness immunity. The first *Hilliard* decision at 516 F.2d 1344 is cited as an example of the minority view in its rejection of absolute immunity for the agent-witness. (*Briscoe* v. *LaHue, supra,* 460 U.S. 325, 328-329, fn. 4 [75 L.Ed.2d 96, 103].) The second *Hilliard* decision is not cited and, in any case, we agree with appellant that the reference does not imply any view on the issue of a law enforcement officer's immunity for suppression of evidence.

[16]The Supreme Court has subsequently referred to *Briscoe* as a case concerning witnesses' immunity. (*Tower* v. *Glover, supra,* 467 U.S. 914, 920 [81 L.Ed.2d 758, 764].)

[17]The common law prosecutorial immunity, sometimes termed "quasi-judicial" immunity, is based upon the same considerations that underlie the common law immunities of judges and grand jurors. (*Imbler* v. *Pachtman, supra,* 424 U.S. 409, 422-423, and fn. 20 [47 L.Ed.2d 128, 139].) The Ninth Circuit has extended immunity to "quasi-judicial" officers other than prosecutors for acts performed as an integral part of the judicial process. Such

support for extending immunity to police officers for activities such as alleged here, which are not part of a judicial proceeding.[18]

Accordingly, the trial court's order as to respondent Bastiani's federal immunity is reversed and the case remanded for further proceedings. In all other respects the judgment is affirmed. The parties shall bear their own costs on appeal.

Smith, J., and Benson, J., concurred.

---

cases, however, involve officials whose positions put them in a direct relationship with the court. (E.g., *Demoran* v. *Witt* (9th Cir. 1986) 781 F.2d 155 [probation officer sued concerning presentence report]; *Mills* v. *Small* (9th Cir. 1971) 446 F.2d 249, cert. den. 404 U.S. 991 [30 L.Ed.2d 543, 92 S.Ct. 535] [medical examiner for court sued for falsely certifying that he had examined plaintiff]; *Burkes* v. *Callion* (9th Cir. 1970) 433 F.2d 318, cert. den. 403 U.S. 908 [29 L.Ed.2d 685, 91 S.Ct. 2217] [probation officer and court appointed medical examiner sued concerning preparation of respective reports].)

[18]The trial court was of the view that since *Briscoe* would preclude Bastiani from being held liable for false testimony, he should also be immunized for failing to come forward with evidence without falsely testifying. This position does not take account of the fact that the reason for *Briscoe's* protection from suit for false testimony was to encourage witnesses to testify *at trial*. The present case arises in the wholly different context of police activities in the investigatory stage of a criminal prosecution. The fact that the police officer was involved with an on-going prosecution does not make his out-of-court act, as distinguished from the prosecutor's, one "'intimately associated with the judicial phase of the criminal process.'" (Trial court order, clerk's transcript at p. 153, quoting *Imbler, supra,* 424 U.S. at p. 430 [47 L.Ed.2d at p. 143].)