[Crim. No. 15580. In Bank. June 18, 1973.]

In re ROBERT F. BROWN et al. on Habeas Corpus.

[Crim. No. 15399. In Bank. June 18, 1973.]

In re ABBASS BOZORG et al. on Habeas Corpus.

(Consolidated Cases.)

## COUNSEL

Carole A. Hughes, under appointment by the Supreme Court, Levy & Van Bourg, Stewart Weinberg and Victor J. Van Bourg for Petitioners.

Evelle J. Younger, Attorney General, Robert H. Granucci, Gloria F. De-Hart, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Respondent.

## OPINION

**THE COURT.**—Petitioners, Robert F. Brown and his six codefendants in one criminal prosecution, and Abbass Bozorg and his four codefendants in a second prosecution, were convicted after jury trials of violating Penal Code sections 408 (participating in an unlawful assembly) and 415 (disturbing the peace). They were acquitted of charges of violating section 409 of that code (failure to disperse).

The appellate department of the superior court affirmed the judgments in the two cases and denied certifications to the Court of Appeal. Upon petitions for writs of habeas corpus, we issued orders to show cause.

On January 23, 1969, petitioners and approximately 1,000 other people attended a noon rally in the central area of the then-named San Francisco State College campus to hear addresses by the chairman of the San Francisco Civil Service Commission and by several leaders of the student strike then in progress on campus. Because of the student strike, an administrative ban on all rallies in the central area of the campus had been instituted on January 6. This ban was still in effect on January 23.

During the morning of January 23 there had been picketing on campus. Towards noon the number of pickets increased as students gathered for the rally. Before the rally commenced two complaints of noise and of threats in the education building had been received; one class was dismissed early because of the din; and several professors and students testified that classes and study were disturbed while the participants gathered.

During the rally itself there was chanting and shouting of slogans which one witness described as "thunderous." Picket signs and banners were waved and clenched fists were raised to punctuate the speeches and chants. However, despite these activities and the large number of people in attendance, the mass meeting was generally orderly. All petitioners were present

at the rally for the purpose of hearing the speakers and demonstrating their support for the strike.

In anticipation of the disruptions, many police officers had been posted on campus. At 12:10, 194 police officers were brought to the central area, flanking the crowd at the speaker's platform. Approximately five minutes after the arrival of the police, Mr. Scoble, a representative of the college administration, was called to the speaker's platform by police officials. He announced that the assembly was unlawful; he ordered that the participants vacate the central campus area; and he further suggested that those gathered move on to the athletic field.[1] Five minutes after Mr. Scoble's announcement, Lieutenant Emil of the San Francisco Police Department also declared from the speaker's platform that the assembly was unlawful and ordered the crowd to disperse. There was evidence presented that a large number of people did not hear either this or Mr. Scoble's announcement. Some of those who heard the announcements responded by shouting obscenities and by shaking clenched fists while others left the rally immediately after Lieutenant Emil's announcement.

Approximately three minutes after Lieutenant Emil's announcement, the police who had been flanking the speaker's platform encircled the crowd that remained. An arrest order was given within five minutes of the officer's announcement. Everyone within the police circle, including petitioners and 425 others, were placed under arrest. The police confiscated assorted objects from various individuals who were arrested. One of the 12 petitioners had in his possession a large picket standard supported on a 2- by 4-inch stick; four had smaller picket standards in their possession; and one of these four also carried knitting needles with knitting attached; none of the others carried any objects which were confiscated.

*The Convictions of Violations of Penal Code Section 415.*

Section 415 of the Penal Code provides in pertinent part: "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct . . . is guilty of a misdemeanor, . . ."

---

[1]The text of Mr. Scoble's announcement was as follows: "I am a representative of Dr. Hayakawa, President of San Francisco State College.

"Penal Code section 407 provides that whenever two or more persons assemble together to do an unlawful act or to do a lawful act in a violent, boisterous or tumultuous manner such conduct constitutes an unlawful assembly.

"The present conduct of those persons who are now assembled in the central campus area constitutes an unlawful assembly and I direct you to leave the central campus area.

"You may move on to the Women's Athletic Field or off the campus."

In the *Bozorg* case, the jury was read the pertinent parts of Penal Code section 415. No general explanation of the statute was given and only three words were specifically defined for the jurors. They were told that "tumultuous" means "boisterous conduct, disorderly, noisy," that "willfully" means "simply a purpose or willingness to commit the act or to make the omission in question" and that "maliciously" means with an intent to vex or annoy or injure another person or with an intent to do a wrongful act.

In the *Brown* case, the jury was similarly read the applicable provisions of Penal Code section 415. Definitions of the words "wilfully" and "maliciously" were given that were substantially equivalent to those given in the *Bozorg* case. The word "tumultuous" was defined as meaning "boisterous; conducted with disorder; disorderly; noisy; confused." As in *Bozorg,* no further definitions were given. Thus, no definition of the word "offensive" or the phrase "loud or unusual noise" was provided for the jury.[2]

In concluding the instructions on section 415 in the *Brown* case, the judge, unlike the judge in the *Bozorg* case, instructed the jurors on freedom of speech. They were told that "the right . . . to peaceably assemble includes the right to communicate ideas by singing, chanting and shouting, as well as by signs, symbols and slogans," but that "pickets shouting in unison in a loud and boisterous manner disturbing the peace and quiet of the neighborhood and thereby interfering with a complainant's peaceful enjoyment of property is unlawful conduct."

The jury was also instructed that "The offense known as breach of the peace embraces a large variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. When clear and present danger of immediate threat to public safety, peace, or order appears, the power of the State to prevent or punish is obvious."

■ The literal language of section 415 embraces a wide variety of prohibited conduct. Much of such conduct was never intended to be proscribed, and some of the other prohibitions are limited by First Amendment considerations. We held in the case of *In re Bushman* (1970) 1 Cal.3d 767, 773 [83 Cal.Rptr. 375, 463 P.2d 727], that that portion of section 415 prohibiting disturbing the peace by tumultuous and offensive conduct was limited to "disruption of public order by acts that are themselves violent or that tend to incite others to violence." In so limiting the statute,

---

[2]In fact, the phrase was continually misstated by the court. The judge twice used the phrase "loud and offensive noises" in her instructions rather than the statutory language "loud or unusual noise."

we relied upon the traditional and historical meaning of similar statutes and in addition reasoned that such limitation was essential so that the section would not infringe the guarantee of freedom of speech set forth in the First Amendment.

In *Cohen* v. *California* (1971) 403 U.S. 15, 17 [29 L.Ed.2d 284, 289, 91 S.Ct. 1780], the United States Supreme Court further limited the applicability of Penal Code section 415. The court reasoned that the portion of the statute dealing with "offensive" conduct could not validly be applied to speech or conduct which merely had a tendency to provoke others to violence and that the proscription was valid only where there was a clear and present danger that violence will imminently erupt.

It is clear that the instructions in the instant cases failed to comply with the requirements of *Bushman* and *Cohen.* The jury was not told in either case that "tumultuous" means acts violent in themselves or that "offensive" applies only where there is a clear and present danger that others will be provoked to immediate violence. Although the judge in *Brown* did instruct on the right to peaceably assemble and made reference to violence, these instructions did not limit the proscription of section 415 to violent conduct or the provocation of violent conduct. The instruction on the right to assemble was qualified by language which indicated that shouting which disturbed others in their enjoyment of their property was unlawful. The reference to violence in the instructions was not by way of limitation but merely by way of illustration, pointing out that violence was included in conduct which might menace tranquility.

Not only were the instructions too broad but it further appears that the evidence did not warrant any instructions on the portion of section 415 prohibiting "tumultuous" and "offensive" conduct. There is no evidence that any of the petitioners used or threatened to use any of the objects confiscated in a violent manner or that they engaged in any "acts that are [by] themselves violent." (*In re Bushman, supra,* 1 Cal.3d 767, 773.) Evidence of violent acts by others on prior occasions may not justify a conviction of petitioners for tumultuous conduct. Evidence was totally absent that any of the petitioners' conduct constituted a clear and present danger of provoking others to imminent violence. (*Cohen* v. *California, supra,* 403 U.S. 15, 17.) There was no showing of a hostile audience which might have been enraged by the conduct of petitioners at the rally.

The Attorney General seeks to preserve the convictions of violating section 415 on the basis of the language in that section prohibiting "maliciously and wilfully disturbing the peace or quiet . . . by loud or unusual

noise." He states that there is substantial evidence that petitioners made loud noises which disrupted class and campus functions.[3]

The statute, however, cannot be interpreted consistent with the First Amendment and traditional views as making criminal all loud shouting or cheering which disturbs and is intended to disturb persons.[4] ▉ When the word "noise" in the statute is properly construed consistent with the First Amendment and traditional views, it encompasses communications made in a loud manner only when there is a clear and present danger of violence or when the communication is not intended as such but is merely a guise to disturb persons.

*Edwards* v. *South Carolina* (1963) 372 U.S. 229, 235-238 [9 L.Ed.2d 697, 701-704, 83 S.Ct. 680], and *Cox* v. *Louisiana* (1965) 379 U.S. 536, 546-550 [13 L.Ed.2d 471, 479-481, 85 S.Ct. 453], held that participating in mass demonstrations in the city streets involving picketing and noisy singing and chanting that undoubtedly disturbed some peaceful enjoyment of property was protected under the First Amendment. Such loud and boisterous conduct was criminal therefore only when it involved a clear and present danger of violence.

As we recognized in *In re Kay* (1970) 1 Cal.3d 930, 940 [83 Cal.Rptr. 686, 464 P.2d 142]: " 'Political campaigns, athletic events, public meetings and a host of other activities produce loud, confused or senseless shouting not in accord with fact, truth, or right procedure to say nothing of not in accord with propriety, modesty, good taste, or good manners. The happy cacophony of democracy would be stilled if all "improper noises" in the normal meaning of the term were suppressed.' "

As early as 1927, the California courts recognized that loud shouting is not in itself unlawful. The court in *People* v. *Kerrick* (1927) 86 Cal.App. 542, 551-552 [261 P. 756], stated: "Not every meeting where violent,

---

[3]The noise in the instant case was due to speaking, chanting and shouting, and we are not concerned here with the alternative prohibition of "unusual" noise.

[4]Subdivisions 1 and 4 of section 7 of the Penal Code define the words "willfully" and "maliciously": "1. The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law or to injure another, or to acquire any advantage;

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"4. The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law; . . ."

If section 415 is viewed as a prohibition of disturbing others, the requirement imported by the terms "willfully" and "maliciously" is simply that the actor intends to disturb.

boisterous, and tumultuous conduct occurs may be denominated an unlawful assembly, even though that be the wording of the statute. It is particularly dangerous in a country where meetings are constantly held for every conceivable purpose, many of them accompanied with much noise and excitement, to lay down such a doctrine. At this time of the year in our country in almost every hamlet, and certainly in every city of any size, contests between the youth of schools and colleges are being staged which could not be characterized as anything other than violent, boisterous, and tumultuous. Yet the communities are not alarmed and the public peace is not endangered. No one would for a moment characterize high school or college football games as unlawful assemblies."

The courts have long recognized that there may be limitations on the exercise of the right to free speech based on time, place, or manner of the exercise of the right. (See, e.g., *Healy* v. *James* (1972) 408 U.S. 169, 192-193 [33 L.Ed.2d 266, 286, 92 S.Ct. 2338]; *Kovacs* v. *Cooper* (1949) 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608]; *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 283 [29 Cal.Rptr. 1, 379 P.2d 481].) ■ Precisely worded statutes establishing reasonable regulations based on the time, place or manner of the exercise of the right of speech will be upheld. Section 415 in this respect may be contrasted to the narrowly drawn statute in *Cox* v. *Louisiana,* 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476], relating to picketing at courthouses. Although the Legislature by carefully drafted statutes could properly establish substantial limitations on noise in particular places such as areas near hospitals and campuses (*Healy* v. *James, supra,* 408 U.S. 169, 192-193; *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 118 [33 L.Ed.2d 222, 233, 92 S.Ct. 2294]; *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503 [21 L.Ed. 2d 731, 89 S.Ct. 733]), section 415 contains no such limitation but applies to all neighborhoods and in addition, to all persons who are disturbed. Moreover, the question is foreclosed by *Cohen* v. *California, supra,* 403 U.S. 15, 19 [29 L.Ed.2d 284, 290], where the court speaking of the provision in section 415 relating to offensive conduct said that the provision would not inform the ordinary person that distinctions between localities were created.

The prohibition on loud noise does not purport to be a reasonable time limitation, as it applies at all times. The manner limitation, "loud," is so broad as to amount to a total prohibition on loud public speech. ■ Although reasonable regulations on the volume of speech are permissible, a prohibition of all loud speech is not. (*Saia* v. *New York* (1948) 334 U.S. 558, 560-562 [92 L.Ed. 1574, 1577-1578, 68 S.Ct. 1148]; *Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276, 284 et seq.; see *Kovacs* v.

*Cooper, supra,* 336 U.S. 77, 82 [93 L.Ed. 513, 519-520].) ▮ We conclude that section 415 cannot, consistent with First Amendment rights, be applied to prohibit all loud speech which disturbs others even if it was intended to do so.

We do not hold, however, that section 415 may never be applied to loud shouting and cheering. There is a fundamental difference between loud communications and the use of loud shouting and cheering, not to inform or persuade, but to disrupt lawful endeavors. ▮ Loud shouting and cheering designed to disrupt rather than communicate may be prohibited generally. As stated in *Giboney* v. *Empire Storage Co.* (1949) 336 U.S. 490, 502 [93 L.Ed. 834, 843-844, 69 S.Ct. 684], "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either *spoken,* written, or printed." (Italics added; see also, *Cox* v. *Louisiana, supra,* 379 U.S. 559, 563 [13 L.Ed.2d 487, 491-492]; *Cox* v. *Louisiana, supra,* 379 U.S. 536, 555 [13 L.Ed.2d 471, 484].) The use of the human voice to disturb others by the mere volume of the sound when there is no substantial effort to communicate or when the seeming communication is used as a guise to accomplish the disruption may be prohibited consistent with First Amendment guarantees.

▮ We are satisfied that loud shouting and cheering constitute the loud "noise" prohibited by section 415 only in two situations: 1) where there is a clear and present danger of imminent violence and 2) where the purported communication is used as a guise to disrupt lawful endeavors. Measured by this standard, it is clear that the instructions in both cases before us relating to Penal Code section 415 were inadequate and erroneous.[5]

*The Convictions of Violations of Penal Code Section 408.*

We turn next to the convictions for unlawful assembly in violation of Penal Code section 408. At the times relevant here, Penal Code section 407 provided: "Whenever two or more persons assemble together to do an unlawful act, and separate without doing or advancing toward it, or

---

[5]The problem was particularly accentuated in the *Brown* case because the judge in discussing the right to communicate by shouting went on to qualify the right by stating that it was unlawful to shout in unison in a loud and boisterous manner where the quiet of the neighborhood was disturbed and there was interference with the peaceful enjoyment of property. By this qualification, communications would be unlawful as long as there was shouting which disturbed others whether the shouting was for purposes of communication and regardless whether there was a clear and present danger of imminent violence.

do a lawful act in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly."[6] Section 408 provides that any person who participates in an unlawful assembly is guilty of a misdemeanor.

In both the *Brown* and *Bozorg* cases the juries were instructed in the language of the statute except that in the *Bozorg* case, the word "violent" was omitted from the instruction. In neither case were any of the words of the statute defined. "Tumultuous" had been defined by both courts previously as meaning boisterous, disorderly, noisy or confused. Both courts instructed that the administrative ban on rallies was purely a statement of administrative policy and not a statement of the law of the State of California.

In *Bozorg* there was only one instruction given on freedom of speech. The jury was told that "A rally or a demonstration is not necessarily in and of itself against the law. Whether or not it is a violation of law must be determined by you from all of the evidence in the case and under the instructions of law as I have stated them to you."

In *Brown* there were extensive instructions given on freedom of speech. The jury was told that "An assembly of persons attended by circumstances reasonably calculated to excite alarm may be an unlawful assembly" but the fact that a policeman declared the assembly unlawful did not make it so.

The jury was further told that "A peaceful assembly is an exercise of freedom of speech guaranteed to all by the First Amendment to the United States Constitution. It is not a violation of the law to attend and remain at a peaceful assembly." The jury was also told that the "right of freedom of speech is protected by both the federal and state constitutions. However, this guarantee of freedom of speech does not confer freedom from responsibility for any abuse of that right, nor may it be used as a license to interfere with the rights of others. When such interference exists, the rights of others may be protected by duly enacted laws."

The court in *Brown* concluded its instructions by stating that in determining whether the assembly was unlawful the jury was not permitted to pass on the content of the ideas expressed by the participants. The jury was permitted to consider the ideas only as evidence of the participants' state of mind.

---

[6] In 1969, the Legislature deleted the phrase "and separate without doing or advancing toward it." (Stats. 1969, ch. 365, p. 890, § 1.)

The right to assemble peaceably, like freedom of speech, is guaranteed by the First Amendment. As noted earlier we held in *In re Bushman, supra,* 1 Cal.3d 767, 773, that in light of the First Amendment guarantee of freedom of speech, the provision in section 415 prohibiting disturbing the peace by tumultuous and offensive conduct must be limited to disruption of public order by acts that are themselves violent or that tend to incite others to violence. ■ The First Amendment guarantee of the right to assemble peaceably, requires similar limitations on the provision in section 407 prohibiting assembly to do "a lawful act in a violent, boisterous or tumultuous manner." (See *Brandenburg* v. *Ohio* (1969) 395 U.S. 444, 449, fn. 4 [23 L.Ed.2d 430, 435, 89 S.Ct. 1827]; *Cox* v. *Louisiana, supra,* 379 U.S. 536, 544-552 [13 L.Ed.2d 471, 478-483].)

The foregoing is the traditional construction of the lawful act provision of section 407. It has long been recognized that the portion of section 407 which proscribes assembling to do a lawful act in a violent, boisterous or tumultuous manner must be narrowly construed. (*People* v. *Kerrick, supra,* 86 Cal.App. 542, 551-552.) Although the public may fear a large, noisy assembly, particularly an assembly that espouses an unpopular idea, such an apprehension does not warrant restraints on the right to assemble unless the apprehension is justifiable and reasonable and the assembly poses a threat of violence. (*Id.,* see also *In re Bacon* (1966) 240 Cal.App.2d 34, 50 [49 Cal.Rptr. 322].) ■ Accordingly, the proscriptions of sections 407 and 408 on assemblies to do a lawful act must be limited to assemblies which are violent or which pose a clear and present danger of imminent violence.

Not only were the instructions on the lawful act portion of section 407 erroneous in that they did not limit the offense to assemblies which are violent or which pose a clear and present danger of imminent violence, but the evidence was insufficient for conviction under this portion of the statute. As pointed out earlier there is no evidence that petitioners engaged in acts which were by themselves violent or which posed clear and present danger of violence.

The alternative proscription of sections 407 and 408, assembly to do an unlawful act, was at the time relevant here qualified by the requirement that the persons "separate without doing or advancing toward it." In the case of *In re Bacon, supra,* 240 Cal.App.2d 34, 48-50, the court concluded that this court, in *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, [239 P.2d 876], had in effect eliminated that requirement in former section 407. The majority in *Coverstone,* which was an action for false arrest, did not expressly deal with the requirement of separation without doing

or advancing toward the illegal act, but merely concluded that there was probable cause to arrest for violation of section 407 on the basis that the defendants had assembled to view a "hot rod" race. The dissenting view likewise did not treat the separation requirement. Although under the facts as stated in *Coverstone* it appears that there was no separation, the case should not be read as deleting the statutory requirement.

In California all crimes are statutory and there are no common law crimes. Only the Legislature and not the courts may make conduct criminal. (Pen. Code, § 6; *People* v. *Mosher* (1969) 1 Cal.3d 379, 385, fn. 1 [82 Cal.Rptr. 379, 461 P.2d 659].) ▮ Deletion by the courts of one of the statutory requirements of a crime would make conduct criminal which the Legislature has not seen fit to make criminal and would violate the fundamental principle that there are no common law crimes in this state. Insofar as *Bacon* indicates that this court deleted one of the statutory requirements of an unlawful assembly or that a court could do so, it is disapproved.

There is no substantial evidence sufficient to justify a finding by the jury that the petitioners or any of them assembled with the purpose of doing an unlawful act and separated without doing it or advancing toward it. ▮ An unlawful act within the meaning of section 407, as the Attorney General concedes, means criminal conduct prohibited by state law. The evidence is such that a jury would be required to find either that the petitioners did not assemble to do an unlawful act or that they did so assemble and that they accomplished the unlawful act or advanced toward it. This is because the only evidence that they assembled to do an unlawful act is their presence at and conduct during the demonstration; such presence or conduct cannot logically furnish an inference that they assembled to do an unlawful act and at the same time an inference that they did not advance toward it or accomplish it.

*Habeas Corpus.*

"Habeas corpus is available in cases where the court has acted in excess of its jurisdiction. (Pen. Code, § 1487, subd. 1; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839].) For purposes of this writ as well as prohibition or certiorari, the term 'jurisdiction' is not limited to its fundamental meaning, and in such proceedings judicial acts may be restrained or annulled if determined to be in excess of the court's powers as defined by constitutional provision, statute, or rules developed by courts. [Citations.] In accordance with these principles a defendant is

entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct. [Citations.]" (*In re Zerbe* (1964) 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]; see also *People* v. *Mutch* (1971) 4 Cal.3d 389, 396 [93 Cal.Rptr. 721, 482 P.2d 633]; *In re Wallace* (1970) 3 Cal.3d 289, 293 [90 Cal.Rptr. 176, 475 P.2d 208].) ▮ Habeas corpus thus is an appropriate remedy to challenge the convictions for unlawful assembly in violation of Penal Code sections 407 and 408 because there is no substantial evidence to support the convictions.

With respect to the convictions of violation of section 415 of the Penal Code, we have noted that there is no substantial evidence to sustain the convictions on the basis of the portion of the section prohibiting tumultuous or offensive conduct. No instructions should have been given on this portion of the section. Nevertheless the courts gave such instructions which erroneously defined the crime. Under the erroneous instructions the evidence strongly pointed to guilt, and there is no way to ascertain whether petitioners' convictions were in fact based on such instructions.

▮ The evidence relating to the loud noise portion of section 415 strongly indicates that although the demonstrators' purpose was to interrupt academic functions on the campus they sought to do so by persuasive communications rather than by disruption in the guise of communication. There is no evidence that petitioners themselves engaged in violence or that their conduct presented a clear and present danger of violence. The instructions in the instant cases left the juries free to convict even though they believed that the cheering and shouting were for the purpose of communicating views and of enlisting support for those views.

Under these circumstances petitioners have met their burden of establishing that their convictions of violation of section 415 were based on constitutionally protected conduct. (*In re Bushman, supra,* 1 Cal.3d 767, 774; *In re Klor* (1966) 64 Cal.2d 816, 821 [51 Cal.Rptr. 903, 415 P.2d 791].)

The writs of habeas corpus are granted, and petitioners are discharged from the custody imposed by the Municipal Court for the City and County of San Francisco pursuant to the judgments of July 2, 1969 and January 5, 1970.

**McCOMB, J.**—I dissent. I would deny the writs.

Respondent's petition for a rehearing was denied July 18, 1973. McComb, J., and Clark, J., were of the opinion that the petition should be granted.