[No. A093980. First Dist., Div. Three. Dec. 31, 2002.]

DAVID McMAHON, Plaintiff and Appellant, v.
ALBANY UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

### Counsel

Walter K. Pyle for Plaintiff and Appellant.

Imai, Tadlock, Keeney & Cordery and T. G. Tadlock for Defendants and Respondents.

### Opinion

**CORRIGAN, Acting P. J.**—Here we hold that appellant David McMahon's motion for directed verdict was appropriately denied and that the jury properly rejected his false arrest claim. His conduct of dumping gallons of garbage on the floor of a schoolroom during a school board meeting was sufficient to support an arrest for disturbing a public meeting and was not speech protected by the First Amendment. We reject McMahon's other claims of error as well and affirm the judgment.

*Factual and Procedural Background*

The events at issue here occurred at the April 1996 meeting of the board of the Albany Unified School District (the District), attended by the five

board members and School Superintendent Dale Hudson. Between January and April 1996, the board held its meetings in the multipurpose room of Cornell Elementary School. Meetings included time during which members of the public could speak to the board. Speakers used a microphone located in front of the board members and Hudson, who sat at tables facing the audience.

Before the meeting in question, McMahon had attended several other board meetings at Cornell Elementary School. At two of those meetings he spoke about trash left by Albany High School students in the neighborhood around the campus. McMahon began picking up litter in the area. He brought a bag of this rubbish to the board meeting in February 1996, and lifted it in the air as he discussed the trash problem. McMahon told the board that the bag contained drug paraphernalia and alcohol containers. He did not empty the bag. No board member prevented McMahon from speaking at the February board meeting or any other meeting.

About 15 people were in the audience of the April board meeting. McMahon brought five 13-gallon bags of trash and placed them in the back of the room before the meeting began. He had been collecting the garbage over several weeks. During the public comment period, McMahon addressed the board. He spoke about seismic retrofitting and traffic improvements related to the building of a new middle school. McMahon then told the board he wanted to discuss trash. He said, "Excuse me one moment while I bring up some trash."[1] He went to the back of the room and retrieved two or three bags, gloves and a plastic tarp. As McMahon opened the tarp, board president Alan Riffer asked, "What is your intent, because this period is matters to address the Board, and we need to have some limit on—and so that we can move on to the rest of the agenda." McMahon replied, "My intent is to talk about public safety as related to trash. And to underscore my point . . . ." McMahon then spread the tarp on the floor and untied the bags. Craig Boyan, principal of Cornell School, was seated in the front row of the audience. Rising from his chair, Boyan called out to McMahon, "Excuse me, kids are in this room tomorrow, and I hope you're not planning on emptying trash out here on the floor." McMahon replied, "I certainly am," to which Boyan responded, "Well I hope you're prepared to clean it up." The multipurpose room was used as the school's cafeteria and student assembly room and for an after-school childcare program. Meals for Cornell and other elementary schools were cooked in the kitchen adjacent to the multipurpose room.

---

[1]The meeting was tape-recorded. A copy of the tape, played for the jury, was admitted in evidence. A copy of the transcript was provided to assist the jury in listening to the tape, and was included in the record on appeal. (Cal. Rules of Court, rule 203.5.) We have listened to the tape and reviewed the transcript.

McMahon, wearing gloves, lifted a bag and dumped its contents on the tarp. Although McMahon was uncertain how many bags he emptied, an audience member saw him dump two bags of garbage. Because McMahon had not fully spread the tarp, some of the trash spilled onto the floor. Principal Boyan described the amount dumped as "substantial," "enough to fill up the tarp."

By this time, superintendent Hudson was standing. Board member McManus said to Hudson, "[W]ill you call the police, because this is an absolutely inappropriate activity to do . . . in a schoolroom . . . ." McMahon responded, "Get the police here because there are some things that I would like the police to see in this trash." The meeting was then adjourned and the board left the room. McMahon announced, "There are drug paraphernalia in this trash, there are bottles of alcohol in this trash." Although McMahon claims the board was gone when he described the contents of the bags, one board member heard the remark as she was leaving the room. The board remained in the adjoining kitchen while McMahon continued emptying trash and speaking to the audience. Hudson called the police.

McMahon was still talking to the audience when the police arrived. Hudson explained that the board wanted McMahon removed so that the meeting could continue, but that McMahon was "still at the microphone" and "[h]e dumped some trash." A police sergeant testified that Hudson wanted McMahon arrested. The sergeant advised Hudson that the police did not have the authority to arrest McMahon because the accusation did not involve a felony and no misdemeanor has been committed in police presence. Hudson then made a citizen's arrest of McMahon for willfully disturbing a public meeting. McMahon continued talking to the audience as officers approached him, placed him in handcuffs and took him to the police station. The board meeting resumed. McMahon was issued a citation and released. No criminal charges were filed against him.

■■■■ McMahon sued the District, its board members and superintendent Hudson, alleging various causes of action. At trial, as a result of pretrial rulings, the only remaining cause of action accused the District, Hudson and McManus of false arrest and false imprisonment.[2] A nonsuit was granted as to McManus. The jury was unable to unable to reach a verdict on the District and Hudson. After a second trial, the jury returned a special verdict in favor of the remaining defendants.

[2]"[W]e point out that 'false arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology. [Citations.]" (*Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 673 [123 Cal.Rptr. 525].)

*I. The Court Properly Denied the Motion for a Directed Verdict*

 McMahon contends the trial court erred in denying his motion for a directed verdict. His claim is without merit.

 "A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629-630 [85 Cal.Rptr.2d 386].)

If a party resisting a motion for a directed verdict produces sufficient evidence to support a jury verdict in its favor, the motion must be denied. (*Howard v. Owens Corning, supra,* 72 Cal.App.4th at p. 630.) McMahon's challenge essentially contends that insufficient evidence supports the jury verdict against him. "Only if there was *no* substantial evidence in support of the verdict could it have been error for the trial court earlier to have denied [the] motion for directed verdict." (*Ibid.*)

 In determining whether the judgment was supported by substantial evidence, we consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in favor of the judgment. We do not reweigh the evidence. "Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard v. Owens Cornings, supra,* 72 Cal.App.4th at pp. 630-631.)

 "A private person may make a 'citizen's arrest' for a public offense committed in his presence. (P.C. 837(1).) However, the cooperation of police officers is necessary to make the arrest effective. The citizen calls the police; they are unable to make an arrest because the offense was previously committed outside their presence; but the citizen may make the arrest and the officers will then take the arrested person into custody." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 390, p. 473, italics omitted.) The jury was instructed that respondents bore the burden of proving that McMahon was lawfully arrested. It found the burden had been met. Substantial evidence supports the finding and therefore the court did not err in denying McMahon's motion for a directed verdict.

## A. *The Supreme Court's Decision in In re Kay*

McMahon was arrested for violating Penal Code section 403, which provides in part: "Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, . . . , is guilty of a misdemeanor." The California Supreme Court undertook an extensive analysis of section 403 in *In re Kay* (1970) 1 Cal.3d 930 [83 Cal.Rptr. 686, 464 P.2d 142] *(Kay)*, interpreting the provision to withstand a First Amendment challenge. In *Kay,* over 6,000 people attended a Fourth of July celebration in a public park. A local congressman was invited to speak during the formal program that preceded the fireworks display. During the congressman's speech, a group of 25 to 250 persons rhythmically clapped and shouted for 5 to 10 minutes, demonstrating disapproval of the congressman's position on a grape boycott. The congressman, who had been using a microphone, was able to finish his speech, pausing to assure the demonstrators that they had a right to protest and encouraging them to be grateful that they lived in a country that protected that right. Neither the congressman nor the police asked the protestors to stop or disperse. When the speech and the program ended, the fireworks were shown. The demonstration did not affect the program. Charges were filed against the protestors two weeks later. *(Id.* at pp. 935-936.)

The *Kay* court noted that, with a single, irrelevant exception, Penal Code section 403 had not been interpreted since its passage almost a century earlier. It then considered the constitutionally permissible bounds of such a statute. The court pointed out that it was guided by principles affecting First Amendment rights and that the conduct involved in *Kay,* including the clapping, constituted "speech" for the purposes of its analysis. *(Kay, supra,* 1 Cal.3d at p. 938.)

Justice Tobriner, writing for the majority, observed: "The Constitution does not require that any person, however lofty his motives, be permitted to obstruct the convention or continuation of a meeting without regard to the implicit customs and usage or explicit rules governing its conduct." *(Kay, supra,* 1 Cal.3d at p. 938.) The rights of some to peaceably assemble and petition for redress of grievances would be undermined if others could prevent or disrupt such activities by disregarding the customs and rules which apply to meetings at which those rights are exercised. On the other hand, other First Amendment rights are at stake when views are publicly expressed. The *Kay* court sought to strike the constitutionally required balance.

"Audience activities, such as heckling, interrupting, harsh questioning, and booing, even though they may be impolite and discourteous, can nonetheless advance the goals of the First Amendment. For many citizens such

participation in public meetings, whether supportive or critical of the speaker, may constitute the only manner in which they can express their views to a large number of people; the Constitution does not require that the effective expression of ideas be restricted to rigid and predetermined patterns." (*Kay, supra,* 1 Cal.3d at p. 939.)

However, "the Constitution indubitably affords some measure of protection to the free expression of *all* those present at a meeting," including speakers, officials and the audience. (*Kay, supra,* 1 Cal.3d at p. 941, italics added.) Because of this broad-ranging protection, "section 403's prohibition of 'disturbances' potentially may collide with safeguarded First Amendment interests. Nonetheless, the state retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion. [Citation.] Freedom of everyone to talk at once can destroy the right of anyone effectively to talk at all. Free expression can expire as tragically in the tumult of license as in the silence of censorship." *(Ibid.)*

 The *Kay* majority concluded that Penal Code section 403, as written, was constitutionally infirm because it applied to "every person who . . . willfully disturbs or breaks up any assembly or meeting . . . ." If invoked without restriction, the statute could criminalize conduct that was "nothing more than an expression of free speech protected by the Constitution." (*Kay, supra,* 1 Cal.3d at p. 941.) The court then interpreted section 403 in a way to serve its purpose without constitutional impingement: "Accordingly, we now explicitly recognize that, in light of the purposes of the provision and the competing First Amendment interests at stake, section 403 authorizes the imposition of criminal sanctions only when the defendant's activity itself— and *not* the content of the activity's expression—substantially impairs the effective conduct of a meeting. [¶] To effectuate section 403 within constitutional limits we interpret it to require the following showing to establish its transgression: that the defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known." (*Kay,* at pp. 942-943.)

The *Kay* court made clear that, in applying its ruling, the nature of the meeting in question "plays a major role." "The customs and usages at political conventions may countenance prolonged, raucous, boisterous demonstrations as an accepted element of the meeting process; similar behavior would violate the customs and usages of a church service. Audience participation may be enthusiastically welcomed at a bonfire football rally or an athletic contest, but considered taboo at a solemn ceremony of a fraternal

order. . . . Thus, rather than enacting monolithic standards, section 403 draws its content from the implicit customs and usages or explicit rules germane to a given meeting." (*Kay, supra,* 1 Cal.3d at p. 943.)

■ *Kay* involved the criminal prosecution of defendants who expressed views contrary to those voiced by an elected official at a large outdoor event. Since *Kay*'s publication, no appellate opinion has considered a Penal Code section 403 violation. Here we must apply *Kay*'s rationale to the prosecution of a civil lawsuit for false arrest in which McMahon claims he was improperly arrested by public officials whom he was addressing at a small meeting conducted in a schoolroom.

### B. *Trial Court's Application of Kay*

The jury in this case was instructed in language specifically based on the authority of *Kay*. It was told: "A fundamental right under the First Amendment of our United States Constitution is freedom of speech. Freedom of speech includes expression which is not only spoken but may include acts or conduct. When conduct is intended to express a message and the likelihood is great that the message would be understood by those who view it, it is entitled to the same protection under the Constitution as the spoken word. [¶] In determining whether Mr. McMahon's acts and conduct violated the law to warrant his arrest as a violation of Penal Code section 403, a distinction has to be drawn between expression which may include acts and an act independent of expression. An act may coexist with expression as well as being a part of the expression which is protected by the First Amendment. [¶] Consequently, Penal Code section 403 authorizes an arrest by citizens or police officers only when a person's (for purposes of this trial Mr. McMahon's) activity itself—and *not the content* of the activity's expression—substantially impairs the effective conduct of the meeting. [¶] For a violation of Penal Code section 403, *disturbing a lawful assembly,* the following elements must exist: [¶] 1. Mr. McMahon must have substantially impaired the conduct of the meeting; [¶] 2. by intentionally committing acts; [¶] 3. in violation of implicit customs or usages for the governance of the meeting of which he knew or, as a reasonable person should have known. [¶] If you find by a preponderance of the evidence that such facts are true, you must find that there was proper cause to arrest Mr. McMahon. [¶] If you find that such facts are not true, you must find that there was not proper cause to arrest Mr. McMahon. That is, if you find that Mr. McMahon was arrested because of his expression (speech)—which can include activities—and not because of his conduct alone, then he would not have been properly arrested. [¶] If you find that the standard of conduct for the Board of Education meeting lies in doubt, in determining whether Mr. McMahon violated implicit customs or

usages for the governance of the meeting, a warning and request that Mr. McMahon curtail his conduct should proceed [*sic*] an arrest. You may consider whether or not a warning or request was directed to Mr. McMahon to cease his activities, and if none, whether there was an opportunity for such a request to be directed to him. If you find that no warning was given and there was an opportunity to give such a request than [*sic*] the arrest is unlawful. [¶] In the crime of *disturbing a lawful assembly* there must exist a union or joint operation of act or conduct and general criminal intent. General criminal intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

The jury was thus told of the necessity to distinguish between disruptive acts and the protected content of an act's expression. It was informed of the elements required for a violation of Penal Code section 403 in conformity with *Kay*.

## C. *Violation of the Customs of the Meeting*

### 1. *The Act of Dumping Trash*

McMahon claims that no custom or usage, of which he knew or should have known, prevented him from dumping gallons of garbage onto the schoolroom floor. Sufficient evidence supports the jury's finding to the contrary.

The record indicates that McMahon freely discussed a range of subjects at the school board meetings, including trash in school neighborhoods. Previously he had illustrated his point by holding up a bag of discarded items he had collected. None of this conduct was unacceptable within the context of meetings held in Cornell Elementary School's multipurpose room. The jury concluded, however, that dumping trash on the tarp and floor was another matter. The room served as the school's cafeteria and student assembly room, and was used after school for childcare. When McMahon started emptying the bag, Principal Boyan expressly cautioned him: "Kids are in this room tomorrow . . . ." The jury reasonably concluded that dumping trash is not an accepted element of meetings regularly held in a room where children eat and congregate, and thus violated the customs and usages of those meetings. Although McMahon told the audience that the bags contained drug paraphernalia and bottles of alcohol, he now describes the contents as innocuous. His assertion is irrelevant. McMahon dumped garbage. It was well within the jury's province to conclude that McMahon's

conduct exceeded the bounds of constitutionally protected speech and crossed the line into the "tumult of license." (*Kay, supra,* 1 Cal.3d at p. 941.)

### 2. *Clear and Present Danger*

McMahon contends that if the board considered that the material he dumped was dangerous or a threat to public safety, respondents had the burden of demonstrating that dumping the trash represented a "clear and present danger." He argues that the First Amendment does not permit the arrest of a speaker for a mere possible danger or for a danger that may occur at some future time. In support of this proposition, McMahon relies on *In re Bushman* (1970) 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727], *In re Brown* (1973) 9 Cal.3d 612 [108 Cal.Rptr. 465, 510 P.2d 1017] and *Jefferson v. Superior Court* (1975) 51 Cal.App.3d 721 [124 Cal.Rptr. 507], all cases that considered violations of Penal Code section 415. As noted by the *Bushman* court, the portion of section 415 applicable in those cases "makes punishable only wilful and malicious conduct that is violent and endangers public safety and order or that creates a clear and present danger that others will engage in violence of that nature." (*In re Bushman, supra,* 1 Cal.3d at p. 773.) McMahon was arrested for a violation of Penal Code section 403, not section 415. Nothing in section 403 or in the Supreme Court's opinion in *Kay* imposes a clear and present danger requirement. The danger and safety issues involved with dumping trash on the floor were considered only in the context of whether such activity violated the customs and usages of a meeting held in schoolroom where young children are cared for.

### 3. *Need for a Warning*

McMahon also argues that the board should have warned him or asked him to stop before having him arrested. McMahon relies on the following language from *Kay*: "Generally, if disturbances are occasioned by nonviolent exercise of free expression, section 403 will require that defendants be shown to have engaged in such conduct with knowledge, or under circumstances in which they should have known, that they were violating an applicable custom, usage, or rule of the meeting. In instances in which the appropriate standard of conduct lies in doubt, a warning and a request that defendants curtail their conduct, either by officials or law enforcement agents, should precede arrest or citation. If section 403 were not so interpreted, individuals would be forced to speculate as to what conduct might entail criminal sanctions and would 'necessarily . . . "steer far wider of the unlawful zone." ' . . ." (*Kay, supra,* 1 Cal.3d at p. 945, citations and fns. omitted.)

At the outset we note that *Kay* does not require a warning in every circumstance that portends a Penal Code section 403 violation. The *Kay*

court states that in instances where the "appropriate standard of conduct lies in doubt," a warning and request to curtail conduct should precede arrest or citation. ■■■ The jury could reasonably have determined that it is self-evident that dumping garbage in a room where children eat lunch violates the custom or usage of the board meetings, obviating the need for a warning or request to stop. Nevertheless, even if admonishments were required in these circumstances, there is sufficient evidence in the record indicating that McMahon was advised that his conduct was improper. Although McMahon claims he did not realize that Boyan was the principal of Cornell School, Boyan's comment nevertheless should have reminded McMahon of the obvious: children use the multipurpose room. Moments later, McMahon heard board member McManus state, "This is an inappropriate activity to do in a school room." McMahon also heard McManus tell Hudson to call the police. Still, McMahon made no effort to stop and pick up the trash. Instead he urged Hudson to call the police. McMahon continued to dump garbage and speak to the audience after the board left the room. Even after the police arrived, McMahon did not pick up the refuse.

McMahon contends that McManus's statement was insufficient under *Kay* to serve as a warning and request to desist. He contends that a board member should have stated expressly, "Mr. McMahon, you are out of order. Please pick up your trash and conclude your remarks." *Kay*, however, does not mandate the use of any particular talismanic phrase. Rather, sufficient notification should be given so that individuals are not "forced to speculate as to what conduct might entail criminal sanctions." (*Kay, supra*, 1 Cal.3d at p. 945.) Board member McManus's direct identification of the conduct as inappropriate and his request to have the police called adequately gave McMahon the notice contemplated in *Kay*. Instead, McMahon encouraged Hudson to call the police. On this record, McMahon's assertion that he was given neither warning nor time to curtail his conduct is unfounded.

D. *Substantial Impairment of the Meeting*

McMahon also argues that his conduct did not "substantially impair the conduct of the meeting." (*Kay, supra*, 1 Cal.3d at p. 943.) McMahon argues that the board could have continued the meeting but simply chose not to do so. ■■■ "Whether a given instance of misconduct substantially impairs the effective conduct of a meeting depends upon the actual impact of that misconduct on the course of the meeting; the question cannot be resolved merely by asking persons present at the meeting whether they were 'disturbed.' [Citation.]" (*Id.* at p. 944.) The *Kay* court, considering the Fourth of July celebration at issue before it, concluded that "[s]ince the nature of that meeting contemplated acceptance of the nonviolent expression of alternative

viewpoints, the petitioners' protest did not impair the conduct of the meeting but instead constituted a legitimate element of it." (*Ibid.*)

 Here, the jury, evaluating the impact of McMahon's conduct on the course of the meeting, concluded that McMahon did more than merely disturb the sensibilities of the board members. McMahon initially addressed the board about trash, eliciting no objections from the board about the content of that speech. He then left the microphone, returned with his garbage bags, and spread a tarp on the floor. At that point, board president Riffer alerted him that the board needed to move on to other matters on the agenda. Nevertheless McMahon proceeded to dump the bags' contents.

The jury legitimately concluded that the board, forced to adhere to McMahon's agenda, was unable to proceed with its own. Had McMahon been permitted to continue dumping his trash in the middle of the meeting, one of two outcomes would necessarily have transpired. Either the meeting would have been further delayed at some point while McMahon picked up the garbage or other speakers would have had to stand near the trash in order to address the board and audience members would have been forced to peer over a mound of garbage in order to watch a public body perform its duty. The properly instructed jury declined to provide "so excessive a use of the First Amendment right to protest that the right would be devoured in its own excesses." (*Kay*, *supra*, 1 Cal.3d at p. 946.) Substantial evidence supports the jury's finding that McMahon's conduct was not a legitimate element of the meeting, but rather a significant impairment of it. (*Id.* at p. 944.)

II. *The Court Did Not Err in Refusing McMahon's Requested Instruction*

 "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298].) Although the trial court fashioned a jury instruction based on *Kay*, set out in section I.B., *ante*, McMahon proposed an alternate instruction. He argues that the court erred in failing to incorporate certain portions of his proposed language. His claim is without merit.

McMahon argues that the trial court should have included this sentence from his proposed instruction: "A person may not be arrested for offensive speech or expressive conduct unless there is both a clear and present danger of violence or threat to public safety." McMahon argues that the court's instruction did not inform the jury "that when an arrest is sought to be justified on grounds that conduct which involves speech creates a danger to

public safety, that the justification must include proof not just of a danger, but of a clear and present, i.e., immediate, danger." As we have discussed, McMahon was not arrested for disturbing the peace in violation of Penal Code section 415. McMahon's proposed language is not applicable to section 403 and the trial court properly rejected it.[3]

McMahon also claims that the jury should have been told: "Under the First Amendment it is lawful for a person to express himself through speech or expressive conduct even though that speech or conduct is not in accord with propriety, modesty, good taste or good manners. Likewise, a person may exercise his right of free speech even . . . when his audience finds his speech or conduct offensive." He also proposed an additional instruction on this topic which stated in part: "The subject matter of the communication protected by the Constitution is not limited by what the audience may prefer to hear. The Constitution may best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."

The court's instruction was a correct statement of the law and adequately addressed the issues to be resolved by the jury. The fact that McMahon's conduct may have been offensive or beyond good taste or "inducing a condition of unrest" is not the inquiry under section Penal Code 403. The *Kay* court recognized the potential conflict between section 403's prohibition of "disturbances" and First Amendment interests. The court noted, "Nonetheless, the state retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion." (*Kay, supra,* 1 Cal.3d at p. 941.) The trial court's instruction correctly advised the jury to consider whether McMahon's conduct, apart from his message, violated the customs of the meeting and resulted in the "substantial impairment of the conduct of that meeting." (*Id.* at p. 945.) The jury was specifically told that if McMahon was arrested because of the content of his speech, the arrest was improper. This charge adequately covered the point made in the nonargumentative part of McMahon's proposed instruction.

---

[3]In closing argument, respondents' counsel argued: "First Amendment of the U.S. Constitution does not allow you to call or yell out fire in a theater. It doesn't allow you to light a fire in a cafeteria room [or] public school where young kids are, and I don't think the First Amendment allows you to dump trash that you have previously described as drug paraphernalia in the cafeteria when you've been told there's going to be kids in there the next day, young kids." McMahon correctly observes that counsel's reference to yelling fire in a theater is taken from *Schenck v. United States* (1919) 249 U.S. 47 [39 S.Ct. 247, 63 L.Ed. 470], in which Justice Holmes first announced the "clear and present danger test." Counsel's remark did not inject the "clear and present danger" requirement into the jury's consideration, however. Considered in context, counsel's remark was intended to depict McMahon's actions as violating the customs of the board meeting and disrupting the proceedings.

Finally, McMahon contends that the trial court erred in not incorporating the following part of his proposed instruction: "In instances in which the appropriate standard of conduct lies in doubt, the chairman or other officials conducting the meeting must give a warning and a request that the speaker curtail his conduct." The trial court's instruction states in part: "You may consider whether or not a warning or request was given to Mr. McMahon." McMahon argues that the trial court should have instructed the jury that the warning or request must come from meeting officials. He relies on the statement in *Kay* that "a warning and a request that defendants curtail their conduct, either by officials or law enforcement agents, should precede arrest or citation." (*Kay, supra*, 1 Cal.3d at p. 945.) McMahon claims the omission of his proposed language allowed jurors to find that the remarks of Principal Boyan, seated in the audience,[4] constituted a sufficient warning.

We need not become enmeshed in a debate over whether Principal Boyan was an "official" for purposes of the *Kay* standard. The obvious purpose of a warning is to clarify the appropriate standard of conduct, should that standard be in doubt. Even if we assume, solely for the purposes of argument, that a reasonable person might entertain an honest doubt about whether it violates implicit customs or usages of such a meeting to dump garbage on the floor of a schoolroom, there was more than sufficient evidence to prove McMahon had such notice based on the statement of board member McManus.

III. *McMahon's Federal Civil Rights Claim Was Time-barred*

On October 30, 1996, McMahon filed a claim against the District under the California Government Claims Act (Gov. Code, § 910 et seq.) (Claims Act), alleging false arrest. The claim was denied on February 10, 1997. McMahon filed his original complaint on June 13, 1997, and a first amended complaint on March 4, 1999. On July 13, 2000, McMahon filed a second amended complaint alleging illegal seizure in violation of the Fourth Amendment as a federal civil rights claim. (42 U.S.C. § 1983.) The trial court sustained respondents' demurrer on the ground that the federal claim was barred by the statute of limitations.

McMahon argues, first, that the trial court erred because the limitations period on the federal claim was tolled while he pursued remedies under the Claims Act. We reject his contention.

The applicable statute of limitations for civil rights actions brought in California under 42 United States Code section 1983 (section 1983) is the

---

[4]McMahon claims he did not know that Boyan was the principal of Cornell Elementary School and considered him simply another member of the audience.

one-year statute of limitations for personal injury actions, as provided in Code of Civil Procedure section 340, subdivision (3). (*West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 953 [98 Cal.Rptr.2d 612].) " 'Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues.' [Citation.] Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " (*Knox v. Davis* (9th Cir. 2001) 260 F.3d 1009, 1013.) McMahon's claim accrued on April 30, 1996, the date of his arrest. His second amended complaint, alleging the federal claim, was filed more than four years later.

The Claims Act provides that notice of a claim must be given to a public agency before an action can be brought against it. (Gov. Code, § 945.4.) A civil action must be filed within six months after the agency has rejected the claim. (Gov. Code, § 945.6.) On the other hand, a plaintiff does not have to file under the Claims Act before initiating a section 1983 action. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 842 [129 Cal.Rptr. 453, 548 P.2d 1125].) There are no procedural impediments to filing a section 1983 action within the one-year period after the cause of action has accrued.

In *Javor v. Taggart* (2002) 98 Cal.App.4th 795 [120 Cal.Rptr.2d 174], the court recently held that the section 1983 limitations period is not tolled by the prior filing of a state law claim. We agree with that holding. The *Javor* court reached its conclusion after a review of federal cases considering the issue. In *Ervin v. Los Angeles County* (9th Cir. 1988) 848 F.2d 1018, 1019-1020, the federal appeals court observed that while claims brought under the Claims Act and section 1983 may be factually related, they nevertheless constitute legally distinct wrongs. As noted in *Stone v. City and County of San Francisco* (N.D.Cal. 1990) 735 F.Supp. 340, 345: "[I]t is clear that the remedies and procedures in the [Government] Claims Act and the Civil Rights Act are separate and independent . . . . The court concludes that plaintiff's [state law] tort claim is not sufficient to toll the statute of limitations on his section 1983 action. Accordingly, as a matter of law, plaintiff's section 1983 claim is barred by the statute of limitations." Likewise, McMahon's federal claim was not tolled while he pursued remedies under the Claims Act. Because he failed to assert his cause of action under section 1983 within one year of the date of his arrest, the claim is time-barred.

Second, McMahon argues that his section 1983 cause of action was tolled pursuant to the general principle of equitable tolling. ▆▆ Under this doctrine, the limitations period is tolled when "the record shows '(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to

defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" (*Daviton v. Columbia/HCA Healthcare Corp.* (9th Cir. 2001) 241 F.3d 1131, 1137-1138.) ■■ We need not consider the first two prongs because McMahon did not satisfy the third. After conceding that the facts supporting his state tort claim and federal claim are virtually identical, McMahon merely asserts that his conduct in filing the federal claim was reasonable and in good faith. Even if McMahon mistakenly believed satisfaction of the Claims Act was required before filing the section 1983 action, he waited more than three and a half years after denial of the Claims Act application before filing. In *Ervin v. Los Angeles County, supra,* 848 F.2d 1018, the appellant, who had previously filed a tort claim action in state court, "had not only conducted an investigation of her own into the facts of this case, but had been in possession of a copy of the results of the appellee's own investigation file as well for perhaps as much as a year and a half prior to filing the instant action in federal district court." (*Id.* at p. 1020.) The federal appeals court rejected her equitable tolling argument, stating: "While it is true, . . . , that the California courts have not clearly defined 'good faith' for purposes of determining the applicability *vel non* of equitable tolling, we conclude that, under the facts as presented here, 'good faith' is to be used in its plain and ordinary sense, and that the appellant's unwarranted delay in filing her federal civil rights claim was neither reasonable nor in good faith." (*Ibid.*) *Ervin*'s reasoning is even more compelling here. McMahon waited a longer period, without explanation, to file his second amended complaint.

### The Court Did Not Err in Granting Summary Judgment

McMahon's fourth cause of action alleged a violation of constitutional rights under Civil Code sections 52 and 52.1. His fifth cause of action sought a judicial declaration that "Defendants' action in adjourning the Board meeting when plaintiff was . . . criticizing their policies relating to trash and public safety, and going into closed session and arranging for the arrest of plaintiff, effecting the arrest of plaintiff, and then resuming the Board Meeting after plaintiff's criticism could not longer be heard, was a violation of the Brown Act. [Gov. Code, S 54950.5 et seq.]" McMahon points out that these causes of actions were identical as to all original defendants and asks us to consider the arguments he made in his earlier appeal as to those defendants dismissed by summary judgment. (*McMahon v. Riffer* (May 22, 2002, A094883) [nonpub. opn.].) We do so, and incorporate by reference our decision in that matter.

Regarding McMahon's fourth cause of action, we concluded that the response to McMahon's conduct at the meeting did not violate the Constitution, and thus is beyond the scope of the Civil Code sections at issue. We

noted that Civil Code sections 52 and 52.1, along with other statutes, were enacted in a coordinated effort to combat hate crimes. As we concluded, "Plaintiff's arrest and subsequent brief confinement was not a hate crime; indeed it was no crime at all." (*McMahon v. Riffer, supra,* A094883.) "Insofar as plaintiff equates the adjournment of the public meeting with infringement upon his First Amendment right of free speech, the inescapable fact is that plaintiff's own conduct caused the adjournment of the meeting." (*Ibid.*) It was not the expression of his views that caused the adjournment, but his dumping of trash in a school cafeteria.

As to McMahon's fifth cause of action, we concluded the trial court did not abuse its discretion in finding that declaratory relief would be inappropriate. The trial court's conclusion was consistent with its determination that such relief was superfluous to the resolution of the underlying merits already reached. As we stated in our earlier opinion: "The chance that the relevant conduct would recur can properly be regarded as remote, thus the grant of relief was unnecessary in the context of litigation the court was simultaneously ending." (*McMahon v. Riffer, supra,* A094883.)

### Disposition

The judgment is affirmed.

Parrilli, J., and Pollak, J., concurred.

A petition for a rehearing was denied January 28, 2003, and appellant's petition for review by the Supreme Court was denied March 19, 2003.